### ARGUED AND DETERMINED

##### IN THE

# SUPREME COURT OF ERRORS

##### OF THE

## STATE OF CONNECTICUT.

~~~~~~~~~

### Brainerd *against* Cowdrey and others.

A bequest of " my *East-Haddam* bank stock," is a specific legacy.

A specific legacy is not to be taken for the payment of debts, until the general fund is exhausted.

The testator gave to $B$, described in the will as the friend of his mother, and for many years a part of his father's family, a life estate in his *East-Haddam* bank stock, and directed that the notes secured upon said stock should be paid by his executor, so far as it could be done consistently with his will; providing also, that said stock should be in discharge of his indebtedness to her, if enough for that purpose; and estimating his cotton goods as about enough to pay his debts. After giving sundry specific legacies, he disposed of the residue of his estate to $C$ and her son $D$, providing that $C$ should have exclusively the dwelling-house where she then lived, and that after her death, the factory estate should be wholly the estate of $D$. It appeared, that just before the execution of his will, the testator became indebted to the *East-Haddam* bank, by two notes, amounting to 4600 dollars, collaterally secured by a pledge of said bank stock, with a power of sale; which notes were unpaid, at the time of his death; that his debt to $B$ was 1530 dollars; that his other debts amounted to 7143 dollars; that the value of the bank stock was 6320 dollars; that the value of the cotton goods was 2400 dollars; and of his other personal property, 6581 dollars. Held, 1. that $B$ took the bank stock subject only to the extinguishment of her debt against the estate, and that the machinery in the factory, as well as the other personal estate not specifically given, was to be applied to the satisfaction of the debt to the bank, before the bank stock could be resorted to for that purpose; 2. that parol evidence as to the condition of the testator's property, was admissible to explain a latent ambiguity; but, 3. that the admission or exclusion of such evidence, in this case, would not vary the result.

This was an appeal from a decree of the court of probate for the district of *East-Haddam,* directing the executor of the

last will and testament of *Epaphroditus Champion*, to sell as much of the stock of the *East-Haddam* bank, belonging to said *Champion's* estate, as should be necessary to pay a certain debt due to that bank, from said estate.

*E. Champion* died in *July*, 1841. On the 30th of *June*, 1841, a few days before his death, he made his last will and testament, containing the following clauses: "I direct my lawful debts to be paid; my cotton goods on hand and in the hands of my agents being about enough for that purpose, strict caution being observed to allow no false or extravagant claims.

"To the friend of my mother, and for many years a part of the family, Miss *Hannah Brainerd*, now of *Hartford*, I direct to be given the life use of the tea set and the two largest tea trays of my mother; also the silver plate of which I may die possessed. After her decease, said silver tea set and salvers and plate shall go to my cousin *Hannah White*, now of *Meriden*, if then living; if deceased, then to her daughter *Elvira*.

"All my furniture, wheresoever it may be, shall be the property and estate of Mrs. *Sarah Cowdrey*, the lady with whom, for some years, I have had a very desirable and pleasant home, and who merits at my hands this token and proof of my thanks and approval of her fidelity to my interest and care of my personal health, comfort and property: all which articles of furniture are of the estimated value of 4700 dollars, as appraised in my father's estate.

"My books, my clothes and wardrobe, and my articles for personal comfort, safety and defence, I give to the two sons of said *Sarah Cowdrey*, to be divided equally between them, of the estimated value of 1000 dollars.

"All my carriages, harnesses and horses, of which I may die possessed, I give to the above named *Sarah Cowdrey*.

"All my farming tools, I give to my young and faithful friend, *Loren Cowdrey*."

On the 3rd of *July*, 1841, the testator added to his will as follows: "To Miss *Hannah Brainerd*, of *Hartford*, a long time member of my father's family, I give my *East-Haddam* bank stock. The notes secured upon said stock are to be paid by my executor, so far as may be consistently with my will; and said stock to be in payment and discharge of my

indebtedness to her, if enough for that purpose ; and if said stock exceed said indebtedness, then the use of all such stock to go to the said *Hannah* for life ; after her decease, to go with the *residuum* of my property. All the rest of my property, real or personal, not necessary or taken to pay my lawful debts, I give and dispose of to Mrs. *Sarah Cowdrey*, and her son *Loren*, except I shall otherwise dispose of the same : it being understood, that Mrs. *Cowdrey* shall have exclusively the dwelling-house where she now lives, so far as I am owner of the same. After the death of said *Sarah*, the factory estate shall be wholly the estate of said *Loren* ; the said *Sarah* not to have a disposing power over the same, but the whole to go to the said *Loren* and his heirs forever, if he have heirs of his body ; but if the said *Loren* die before the said *Sarah*, without heirs, then the estate, after the death of said *Sarah*, to go to *Washington College*, at *Hartford*, to be their estate in fee, with power to collect the rents forever, but not to sell the same."

The testator's property, at his decease, consisted of land connected with the factory mentioned in his will, of the value of 7,400 dollars, and other land at *East-Haddam*, of the value of 670 dollars ; and of personal estate of the value of 16,860 dollars, 29 cents. The personal estate consisted of articles of comfort and defence, &c., worth 246 dollars, 45 cents ; furniture worth 972 dollars, 84 cents ; plate worth 93 dollars, 75 cents ; books worth 79 dollars, 3 cents ; liquors worth 98 dollars, 82 cents ; farming tools worth 167 dollars, 40 cents ; and other articles specifically bequeathed in the first part of the will, amounting to 1559 dollars, 47 cents ; bank stock of the *East-Haddam* bank, mentioned in the will, of the value of 6320 dollars ; cotton goods of the value of 2400 dollars ; and machines used in and belonging to the factory, and other articles of personal property, of the value of 6580 dollars, 82 cents. The debts against the estate, as allowed by the commissioners, amounted to 8673 dollars, 2 cents ; of which amount the sum of 1530 dollars, 14 cents, is due to the appellant on account of the indebtedness referred to in the will.

On the 3d of *December*, 1842, on the application of the executor, the court of probate made the following order : " This court, having duly considered said application, and the respective claims as therein set forth, and the evidence in sup-

port of the same, is of opinion that it was the intention of said *Champion* that the debt due to said bank should be satisfied from said stock, as far forth as he had not made express provision for the same. It is therefore ordered and decreed, that said executor be authorized and directed to sell so much of said bank stock, as may be necessary to pay said bank debt, at private sale, for not less than the inventory price, or at public auction, after posting notice of the time and place of said sale on the public sign-post in *East-Haddam Landing,* at least three weeks before said sale, and advertising the same in a newspaper printed in *Middletown.*" At the time of making this order, (as well as before and since,) there was more either of real or personal estate, (the latter consisting of the machinery in or belonging to the factory, exclusive of the articles specifically bequeathed in the first part of the will and the bank stock,) than was necessary to pay all the debts of the estate, exclusive of the debt of the appellant. The executor has applied the personal property of the testator, except what was specifically bequeathed, amounting to 1559 dollars, 47 cents, and the bank stock, and the machinery used in and belonging to the factory, and constituting a part of the factory estate mentioned in the will, in payment of the debts and charges against the estate. The value of the cotton goods owned by the testator, at the time of his death, was 2400 dollars, and no more. The other personal estate of the testator not specifically bequeathed, except said machinery, amounted to 409 dollars, 22 cents. The machinery was valued at 7227 dollars, 66 cents. The bank stock consisted of 79 shares, the par value of which was 6320 dollars. The indebtedness of the testator to the *East-Haddam* bank, at the time of his decease, amounted to 4600 dollars, secured by two promissory notes, dated *July* 3rd, 1841, and made before the execution of the will, one for 3900 dollars, the other for 700 dollars, both payable four months after date, with a pledge of the 79 shares of bank stock, and a power of attorney to the cashier, authorizing him, in case the notes should not be paid when due, to sell said shares and apply the avails in satisfaction of the debt.

These facts were proved, by testimony adduced to the court dehors the will; which testimony, being objected to, was admitted subject to the opinion of this court, as to its ad-

missibility and effect to prove such facts.   And thereupon the case was reserved for the advice of this court as to what judgment or decree ought to be rendered or made.

*Hungerford* and *Mc Curdy*, for the appellant, contended, 1. That the appellant was entitled to the use of the bank stock for life, subject to no other charge than her debt against the estate.   In the first place, the language of the will giving the use of the stock to her, is direct, positive and clear ; and *that* must be the sole exponent of the testator's meaning. Secondly, the gift of the bank stock is *specific*, and the appellant is entitled to it as *a specific legacy*.   " My *East-Haddam* bank stock," is not less specific than *my gold-headed cane*, or *my diamond breast-pin*.   1 *Sw. Dig*. 453.   *Walton* v. *Walton*, 7 *Johns. Ch. R*. 258. 262.   The gift of the machinery, on the other hand, is general and residuary ; and therefore, independently of any express provision of the will, it must be first taken for the payment of debts.   1 *Sw. Dig*. 453. 456, 7. Thirdly, the will directs expressly, that the machinery shall be taken instead of the bank stock.   The first clause of the second part of the will directs the bank debt to be *paid by his executor*, and the next clause charges the payment of his "lawful debts" on the other property, of which the machinery is part.

2. That the parol evidence was inadmissible.   If it contradicts the language of the will, it is, for that reason, exceptionable ; and if this is not the object, it is irrelevant.   *Avery* v. *Chappel & al*., 6 *Conn. Rep*. 270.

*Bulkley*, for the appellees, contended, 1. That the bank stock was subject to the testator's indebtedness to the bank, and so far as that indebtedness was not discharged by the application of the property not specifically given, it was to be paid by a sale of the bank stock.   This appears, first, from the power given to the bank, on the day of the execution of the will, to sell the stock, and apply the avails in satisfaction of the notes.   Secondly, from the fact that the other funds, applicable to the payment of debts, were wholly inadequate. All the estate, except the cotton goods and some other articles of real and personal property, amounting to about 1100 dollars, is specifically disposed of—the factory estate as well as

the rest.   Thirdly, from the direction in the will that the debt due to the appellant should be paid out of the bank stock, *if there should be enough of it for that purpose.*   Fourthly, the testator never designed that his factory should be stripped of its machinery, but that it should remain a monument of his industry and enterprise.   Fifthly, taking all the provisions of the will together, there is nothing in them inconsistent with the construction claimed by the appellees.

2.  That parol evidence of the situation and circumstances of the parties, is admissible, for the purpose of aiding in the construction of a will—to show the state of things in reference to which the provisions in question were made.   *Williams* v. *Crary,* 8 *Cowen* 246.   4 *Wend.* 443. 451.   *Selwood* v. *Mildmay,* 3 *Ves. jr.* 306.   *Fonnereau* v. *Poyntz,* 1 *Bro. Ch. Ca.* 472.   *Doe* v. *Roe,* 1 *Wend.* 541. 548, 9.   *Doe* d. *Le Chevalier* v.   *Huthwaite* & al. 3 *B. & Cres.* 632. (5 *E. C. L.* 406.)   *Brown* v. *Thorndike,* 15 *Pick.* 388. 400, 1.   *Sargent* & al. v. *Towne,* 10 *Mass. R.* 302. 307.   *Ely* & al. v. *Adams,* 19 *Johns. R.* 313. 317, 18.   *The Mechanics Bank of Alexandria* v. *Bank of Columbia,* 5 *Wheat. R.* 326.

WILLIAMS, Ch. J.   The question upon this appeal, is, what property is given to the appellant, by this will, in the *East-Haddam* bank stock.

The testator, on the 3d of *July,* 1841, after having made a disposition of a part of his personal property, on the 30th of *June,* completed the disposition of his whole estate, both real and personal; and having given to *Hannah Brainerd,* the appellant, by the former will, as the friend of his mother, the use of sundry articles, which he deemed of peculiar value, he now makes a more substantial donation in these words: "I give to Miss *Hannah Brainerd* of *Hartford,* a long time member of my father's family, my *East-Haddam* bank stock.   The notes secured upon said stock are to be paid, by my executor or administrator, so far as may be consistent with my will; and said stock to be in payment and discharge of my indebtedness to her, if enough for that purpose; and if said stock exceed said indebtedness, then the use of all such stock to go to the said *Hannah* for life: after her decease, to go with the *residuum* of my property."   That this was a specific legacy to Miss *Brainerd,* cannot admit of a doubt.   A

specific legacy is a disposition of a certain thing, which may be known and distinguished from any other thing of the same kind,—so that the legatee may say, I have a right to this very thing. 1 *Pow. Swinb. on Wills,* 308. All the testator's interest in thirty shares of *U. S. Bank* stock, was held a specific legacy. *Walton* v. *Walton,* 7 *Johns. Ch. R.* 202. If he had the stock at the time, it would be considered specific, and that he meant the identical stock. 3 *Ves.* jun. 310. The legacy, then, is as specific as if he had given his horse or his watch; and it is a settled principle, that a specific legacy shall not be taken for the payment of debts until the general fund is exhausted.

It is said, however, that in this case, the bank stock was mortgaged to the bank, on the very day the will was made, with a power to sell, and of course, must be subject to that mortgage.

That certainly is true as between the mortgagee and the legatee; but not necessarily so between the legatee and the executor. It is the duty of the executor to pay all the debts, without reference to any collateral security existing; and the property thus relieved is subject to the will of the testator; nor can we see, that the time of making this mortgage could change the general rule.

The testator, then, must be supposed to make this bequest, with knowledge of this rule, and with an understanding that the property bequeathed must be relieved of this incumbrance, unless something appear to show a different intent. So far from that, in this case, the testator explicitly provides, that the notes secured on said stock shall be paid *by his executor.* He is anxious that it should be known, that his intent corresponds with the law, or that it shall not be frustrated by it. It is as if he had said, this incumbrance is not to be in the way of her enjoying this property: my executor must see to that. Had he stopped here, there could be no question what was meant; but he makes this addition—" so far as may be consistent with my will;" and also provides, that the stock should go in payment of this indebtedness to said *Hannah Brainerd,* if there was enough for that purpose.

It brings us, then, to this precise question, whether there is in the will any thing inconsistent with the direction before

expressed. If there is not, the appellant is entitled to this stock freed from the incumbrance.

It is said, this could not have been his intent, because the fund he relied upon for the purpose of paying debts, is so totally inadequate for the purpose. That fund, they say, was the cotton goods, which, with what he has in the hands of agents, he estimates at about enough to pay his debts, strict regard being observed to allow no false or extravagant claims. And now it appears, that debts have been allowed, by the commissioners, to the amount of 7,143 dollars, besides the debt due the appellant; and that the cotton goods were worth, at the time of the testator's death, but 2,400 dollars; from which it is inferred, that he could not have intended to include the bank debt. This clause in the will differs entirely from cases where a fund is designated from which the debts are to be paid, and the fund falls short. This is a mere expression of opinion—an estimate amounting to little more than a strong hope that these cottons will be sufficient, if no false or extravagant claims are allowed.

What *data* he had before him, whereon to make an estimate of the value of this property, or of the amount of debts, we know not; but we do know how often such estimates are fallacious. We know not but he greatly over-estimated the cotton, or underrated the amount of debts. However the fact may have been, it would go but little way to prove that he did not mean what he said, when he directed his executor to pay his debts, imposing no restriction but that he should not pay false or extravagant ones. Far more probable is it, that the property is worth much less than he supposed, or that he was a more partial judge in regard to the debts than the commissioners,—than that he did not intend this incumbrance should be removed, by the executor. The fact, if proved, is of too equivocal a character to change the construction of this will. He has indeed modified the provision of the first will, by directing that the debt of the appellant should be paid from this stock; but this, so far from being an argument in favour of the appellees, rather operates the other way; for if he intended any other debts should have been paid in the same way, we may reasonably suppose he would have made similar provision. This would have been the ordinary course.

Here we may advert to the consequences which would seem to follow from this claim of the appellees. If the testator intended, that the bank debt and the appellant's debt should both be paid out of the *East-Haddam* bank stock, he must have intended to trifle with this legatee, when he made this donation. The legacy purports to convey the use of all his *East Haddam* bank stock, deducting her debts. The stock is appraised at 6320 dollars; her debt is 1530 dollars; leaving 4790 dollars. The debt due to the bank is 4600 dollars; so that this munificent donation to this friend of his mother, so long a member of his father's family, dwindles down to the pittance of dividends for life on stock amounting to 190 dollars.

The fact that he pledged the stock, with power to sell, upon the very day he made the will, is also urged as evidence of his intent that it should be subject to this incumbrance; and yet we find him, that very day, directing the executor to pay this debt, and procuring an extension of time on his debts.

But he adds to his direction that the debt of Miss *Brainerd* shall be paid out of the bank stock, " *if there should be enough of it.*" This, it is said, shows an intent that it should be taken for the bank debt. But it only proves, that he knew it might possibly be taken, or what perhaps at that time is more probable, he knew that this stock was subject to the same casualties which had attended much more prominent institutions. If he made any calculations, he knew that the stock would pay both debts, and leave a balance, unless there was a depreciation in the stock.

We are then again brought back to the question, whether the executor can pay this debt, consistently with the other provisions of this will? If so, it must be his duty to do it.

The two instruments, one dated the 30th of *June*, and the other the 3d of *July*, though made at different times, constituted one will, and are to be construed together; and his intent is found from the whole compared.

The first paper purports only to convey some particular articles of personal property, after payment of debts to Miss *Brainerd* and Mrs. *Sarah Cowdrey*, closing with an intimation that something further was intended. On the 3d of *July* following, he carries out this intention, and after the clause alluded to, in the first part of this opinion, he makes a general

devise of all the rest and residue of his property, real and personal, (not necessarily taken to pay his lawful debts,) to Mrs. *Cowdrey* and her son. Had he stopped here, it could not have been claimed, that it interfered at all with the legacy to Miss *Brainerd.* All that is given is the estate remaining after the payment of his lawful debts, including of course the legacy just given.

But the will proceeds further, and says, it being understood that Mrs. *Cowdrey* shall have exclusively the dwelling-house, and after her death, the factory estate shall be wholly the estate of said *Loren.* It is claimed, that by " factory estate," the devisor means the factory and machinery ; and so this machinery is also specifically devised, and cannot be sold to pay debts. But we see nothing in the words " factory estate," which necessarily imports a conveyance of the machinery in the factory. It has been decided, by this court, that the machinery in a factory is personal property ; and the word " estate" is one appropriated to real property, though it is sometimes applied to personal. There is certainly nothing to prove that he intended to convey machinery, unless we can infer it from the words " factory estate." Had a man given his estate at *East-Haddam,* where he had a house and homestead, no one could pretend he intended to give the furniture in the house ; and had he given his factory merely, it could hardly have been claimed, that he gave the furniture in it, or the machinery ; and certainly, there is nothing in the term " estate," which will convey a stronger idea of personal property ; nor is there a syllable tending to show that he used the word " estate," in any other than its legal sense.

It is asked, however, could he intend to strip his factory of all that could render it useful ? If a farmer, having a well-stocked farm, and one well furnished with farming utensils, should order his lawful debts paid, and give legacies to one child, and devise his farm or his estate to another, it would hardly be claimed, that because that farm would be of no use without stock or farming implements, the stock or farming implements passed with the farm ; and we see no difference in the principle. The factory estate and the farm would both possess a certain value, without the machinery or the implements used with them ; but they would be of just as much more value, if these implements or that machinery were given

with them, as it would cost to supply them ; and whether the devisor intended that both should pass or not, must be ascertained, not by the importance of them, but by the words he used and the general intent.

When then the farmer provides, that his debts shall be paid, and his farm pass to his son, we have no reason to suppose he means to give his son any thing but his land. And here, when the testator devises his " factory estate," we see no reason to suppose he means to give any thing more than that estate ; at all events, we cannot suppose, that by this expression, he intended to limit a former bequest, by which the personal property in this factory might be appropriated.

But we think the true view of this part of the will, is, to consider the devise to *Loren*, the son, as not intended to enlarge at all the estate before granted to the mother, but to direct how what he understood would eventually (after payment of debts &c.) be received under the will, should be divided between them. Mrs. *Cowdrey* should have the dwelling-house ; the son, not the factory building, but the factory estate —that is, not the building merely, but the water-works and lands connected therewith. We can, therefore, see nothing in this part of the will, which will prevent the personal property in the factory from being taken for the payment of debts. Of course, the decree of the court of probate directing the bank stock to be sold for the payment of the debts, is erroneous.

The general rule that parol evidence is admissible to explain a latent ambiguity, is perfectly well settled ; and that the condition of the testator's property may be shown to raise this ambiguity, is also settled. *Fonnereau* v. *Pointz*, 1 *Brown's Ch. Rep.* 472. *Selwood* v. *Mildmay*, 3 *Ves.* jun. 306. How far these principles are applicable to this case, we have not thought it necessary to determine, because whether the evidence is admitted or not, we think the result must be the same ; and therefore, we advise the superior court to disaffirm the decree complained of.

In this opinion the other Judges concurred, except WAITE, J., who declined sitting in the case.

<p align="center">Decree of probate disaffirmed.</p>