JEFFREY O. PHELPS *vs.* FARMERS AND MECHANICS BANK.

Where the charter of a bank provided that charitable societies might, from time to time, subscribe for stock of the bank in addition to its fixed capital, which stock was not to be transferable and might be withdrawn at par on certain notice, and the bank had declared a dividend from its surplus earnings; it was held that the societies subscribing were share holders, with all the rights of individual shareholders, and entitled to receive their proportion of the dividend, although the fund from which it was declared was earned in great part before they became stockholders.

The profits and surplus funds of a bank, whenever they may have accrued, are, until separated from the capital by the declaring of a dividend, a part of the stock itself, and will pass under that name in a transfer or bequest.

PETITION for an injunction to restrain the respondents from paying a dividend declared by the directors.

The 10th section of the respondents' charter provides that, in addition to their fixed capital, the bank shall be open at all times for subscriptions from the funds of the state, the school fund, or the funds of any college, ecclesiastical society, school, or corporation for charitable purposes within the state, provided that the shares so subscribed shall not be transferable, but may at any time be withdrawn on twelve months notice to the directors, and shall not exceed twenty-five per cent. of the shares subscribed by individuals. Under the provisions of this section sundry charitable corporations subscribed from time to time for shares in the bank, from the year 1834, the year after the bank was organized, down to 1852. On the 11th of May, 1857, the bank having a surplus fund of $90,000, mostly earned before the majority of these subscriptions were made, declared from such fund a dividend of fifteen per cent. payable indiscriminately to this class of shareholders and to the regular stockholders. The petitioner, an individual stockholder, brought his petition to the superior court for an injunction restraining the bank from paying the .dividend to the charitable corporations. The questions in the cause were reserved for the advice of this court.

*Hungerford* and *Matson,* for the petitioner.

The charitable societies are entitled to share in such portion only of the surplus fund as was earned after they respectively subscribed. 1st. No provision of the charter authorizes the payment of more. 2d. Although these societies may subscribe for stock beyond the fixed capital of the bank, their subscriptions are not permanent stock, as they may be made at pleasure, and withdrawn at any time on notice, and are not transferable. These incidents constitute these shares deposits rather than stock, and as such they are equitably entitled to draw only their proportion of the profits earned while they actually continue in the bank ; the profits being in the nature of interest. 3d. As there is no limit to the time for their subscriptions, the societies might subscribe when the bank had a large surplus on hand and just before the declaration of a dividend, and thus receive a dividend which their stock never earned, to the prejudice of the *bona fide* stockholders. The surplus capital of the bank being the property of the stockholders as well before as after a dividend is declared, their property would thus be taken without compensation. 4th. The statute passed in 1855, (Public Acts 1855, chap. 17,) which provides that any such society shall not be entitled to its share of the surplus on hand at the time of its subscription, has given a construction to the charter on this subject, and has declared the rule that should be applied in this case.

The case of the *United Society* v. *Eagle Bank,* 7 Conn., 456, differs materially from this. There the bank was insolvent and the rights of creditors and bill holders were affected, the question being between them and the society. The charter of the Eagle bank is also unlike that of this bank.

*Hubbard* and *Pardee,* for the respondents.

The provision of the 10th section of the respondents' charter was intended by the legislature as a burden, in the nature of a bonus for the granting of their charter. It was also intended to aid charitable societies. They might have subscribed without the 10th section, but that gives them peculiar privileges. The legislature intended in allowing

them to subscribe at any time when they should please, to enable them to participate in the profits earned by other stockholders.

These societies are stockholders with equal privileges with other stockholders, and no distinction in the division of profits is to be made. The law knows no distinction between profits and surplus funds of a bank, and both must be divided among all who are stockholders at the time a dividend is declared, without reference to the time when earned or the commencement of the interest of any of the stockholders.

The charter of the bank is to govern in this case without reference to the public acts passed before or since. *Titcomb* v. *Union Ins. Co.,* 8 Mass., 326. *Granby* v. *Thurston,* 23 Conn., 416.

ELLSWORTH, J. This petition is brought by an individual stockholder of the Farmers and Mechanics' bank, to try the question whether the public and privileged stockholders in the bank, as the state, colleges, school societies, religious corporations and the like, stand on the same ground as to dividends, whenever made by the bank, as the other stockholders.

It appears from the record that this bank went into operation in 1833, and had at the time of the dividend of fifteen per cent., (May 11th, 1857,) an accumulated surplus of about $90,000, which surplus or a considerable part of it had been accumulating for years, and the greater part of which had been earned before most of the subscriptions of these corporations had been made.

It is claimed by the petitioner that these corporate bodies are not shareholders entitled to the rights and privileges of shareholders, but are mere depositors, entitled by virtue of their peculiar relation to the bank, to participate only in the profits which their own funds respectively helped to earn, just as the statute of 1855, (Pub. Acts 1855, p. 18,) directs shall be the law thereafter. On the other hand it is contended that when these corporate bodies subscribe under the 10th section of this charter, (the provisions of which are to

be found in the bank charters generally,) they hold their stock just like the other shareholders, and of course are entitled to share as others in all the dividends and property of the bank. We think this latter view is the correct one. The charter speaks of these subscriptions as " shares of stock," and for aught we see they are throughout placed on the same footing with other shares of stock, saving only that they may not be transferred, and may be withdrawn after notice, at par, so long as the bank is solvent. The profits of a bank, no matter when made, until separated from the stock by declaring a dividend, are mere increment and augmentation of the stock. They are properly stock themselves, composing a part of the stock of the bank, and will pass with the stock under that name, either by contract, bequest or levy of execution. The *impossibility of ascertaining the exact state and condition of* the bank at the moment of subscribing, (and subscriptions of this class are made, not at any fixed time, but at the pleasure of the party,) is a weighty consideration why undeclared profits should be held to be a part of the stock itself. If a bank has a certain defined surplus, which has actually been separated and made distinct, and is so known and treated by contracting parties or by the statute, it is possible that it may, in that case, be held to possess a new character and be dealt with accordingly ; but it must be a very peculiar case, differing essentially from what we have here. This $90,000 had not been separated from the other profits, but was mixed indiscriminately with them, and was attached to and constituted a part of each share of the stock until the dividend of the 11th of May, 1857.

The case in this court of the *United Society* v. *Eagle Bank*, 7 Conn., 456, is against the views of the petitioner. There the court held that the society by its subscription became a part of the corporation and held its shares like the other stockholders, and that its inability to transfer its stock and its privilege to withdraw at par made no difference in its character as a stockholder. Indeed these qualifications presuppose that these corporate bodies are stockholders, for why

else does the charter provide that they shall not transfer their stock, and may on notice withdraw it at par.

The bill must be dismissed.

In this opinion the other judges concurred.

Bill to be dismissed.