LYONS v. LYONS.

(Circuit Court of Appeals, Fourth Circuit. May 3, 1916.)

No. 1410.

1. WILLS ⊜⚊441, 457—CONSTRUCTION—INTENT OF TESTATOR.

In construing a will, the court will not only consider the context, but may consider the facts and circumstances existing at the time of the will, and, to give effect to the testator's intent, adopt a nontechnical meaning of words used.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 958, 975; Dec. Dig. ⊜⚊441, 457.]

2. WILLS ⊜⚊566—CONSTRUCTION—PROPERTY DEVISED—"MONEY IN BANK."

A testator devised real estate appraised at a specified value to a nephew, bequeathed to his wife all his shares of capital stock of a bank, amounting to 20 shares, made small cash bequests, gave to a brother the residue "of my money in bank" remaining after payment of debts, expenses of administration, and legacies, and gave his residuary estate to his wife. Testator was, at the time of the making of the will, past 60 years of age and childless, and had retired from business. Testator and his wife had talked over the matter of the disposition of his estate, and had agreed thereon when he sent for a lawyer, who drew the will according to instructions. Held, that the term "money in bank," in the will, in-

─⊜⚊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cluded, not only a checking account, but also time and savings deposits of testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1238½, 1239; Dec. Dig. ☞566.

For other definitions, see Words and Phrases, Second Series, Money on Deposit in Bank.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Clarksburg; Alston G. Dayton, Judge.

Suit by Michael Lyons against Mary E. Lyons, in her own right and as administratrix with will annexed of John Lyons, deceased. From a decree for complainant (224 Fed. 772), defendant appeals. Affirmed.

Edward G. Smith, of Clarksburg, W. Va. (Smith & Jackson, of Clarksburg, W. Va., on the brief), for appellant.

E. Bryan Templeman, of Clarksburg, W. Va. (Davis, Swartz & Templeman, of Clarksburg, W. Va., and Walter F. Carter and Rounds, Schurman & Dwight, all of New York City, on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This suit was instituted in the District Court of the United States for the Northern District of West Virginia by Michael Lyons, complainant, against Mary E. Lyons, in her own right and as administratrix with the will annexed of John Lyons, deceased, defendant, for the purpose of surcharging and falsifying the accounts of Mary E. Lyons, as administratrix c. t. a. That portion of the eighth clause of the will involved in this controversy is in the following language:

"I give and bequeath to my brother, Michael Lyons, of Ganaveen, Ireland, the residue of my money in bank remaining after the payment of my aforesaid funeral expenses, debts, costs and expenses of administration of my estate and the legacies aforesaid. * * *"

It was shown by the testimony that the testator at the time of his death had on deposit certain certificates in banks in the city of Clarksburg, as follows: Three, aggregating $2,746.34, in the Home Bank for Savings; one, for $865.94, in the Union National Bank of Clarksburg; one, for $1,187.64, in the West Virginia Bank; a savings deposit in the Lowndes Savings & Trust Company, amounting to $3,866.45; and a checking account in the Home Bank for Savings, amounting to $854.14.

It is insisted by appellee that by virtue of the clause which we have just quoted the certificates of deposit, savings account, and checking account, after the payment of funeral expenses, debts, costs and expenses of administration, and the legacies mentioned, passed to him. On the other hand, it is contended by appellant that the words "money in bank" being currency or coin, that money on time deposit or savings account did not pass, because such moneys were debts, not due, owing by the bank to the depositor, and were choses in action. It is our duty to ascertain, if possible, the intent of the testator as

respects the disposition of the money or property to which reference is made in that portion of the eighth clause of the will which we have just quoted.

[1, 2] It is well settled that in the construction of a will the court may not only consider the context of the same, but may further consider the facts and circumstances existing at the time the will was made. In the case of Wootton v. Redd, 12 Grat. 205, the Supreme Court of Virginia said:

"In performing the duty of expounding a will, the court will make the amplest allowance for the unskillfulness and negligence of the testator, technical informalities will be disregarded, the most perplexing complications of words and sentences will be carefully unfolded, and the traces of the testator's intention will be diligently sought out in every part of the instrument, and the whole carefully weighed together. Nor in the performance of this duty will the judicial expositor be confined to its mere contents. For an investigation into the state of facts under which the will was made will often materially aid in elucidating the scheme which the testator had in mind for the disposition of his estate. Hence he will endeavor to place himself in the situation of the person whose language he is called on to interpret; and as this can only be done by the aid of extrinsic evidence, such evidence may be resorted to for the purpose of showing the situation of the testator and the state of his family and of his property at the time of making his will. And, generally, evidence may be received as to any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property, and as to all the surrounding circumstances at the time of the making the will. Wigram on Admission of Extrinsic Evidence in Aid of the Interpretation of Wills, p. 11 et seq.; Id., Proposition 5, p. 51; Id., p. 57; Smith v. Bell, 6 Pet. 68, 75 [8 L. Ed. 322]; Doe v. Martin, Nev. & Mann. 524; Shelton v. Shelton, 1 Wash. [Va.] 53, 56; Kennon v. McRoberts, 1 Wash. [Va.] 96, 102 [1 Am. Dec. 428]; Ellis v. Merrimack Bridge, 2 Pick. [Mass.] 243; Brainerd v. Cowdrey, 16 Conn. 1."

It is insisted by counsel for appellant that certificates of deposit are choses in action, and that technical words will be given technical meanings, unless the contrary appears from the context of the will. This rule ordinarily applies, but after considering the language of the clause to be construed in this controversy we deem it important, if possible, to ascertain the intent of the testator, feeling as we do that the facts and circumstances are such as to show that he used the words in a nontechnical sense. In Page on Wills, § 471, it is said:

"It is presumed, therefore, that the words of the will are used in their popular and conventional meaning, unless from the face of the will they appear to be otherwise used. Thus a provision that the wife of testator should be 'sole controller' of the property of the testator, and charging all his just debts upon a certain fund, was held to constitute his wife his executrix, but not sole legatee. If, however, testator uses words which have a definite and well-understood technical meaning, the prima facie presumption will be that he intended to use them in this sense, unless it appears plainly from the context that another meaning was intended."

Charles B. Johnson, who was introduced as a witness on behalf of complainant, testified that he was engaged in the practice of law, that he had known testator probably two or three years prior to his death, and that he prepared his will. Witness further testified as follows:

"Q. Who was present when you drew the will, and where was it done? A. The will was, of course, drawn by me in my office; but I made three or four trips, possibly only three trips, to the residence of Mr. John Lyons in Clarksburg, and received from him and his wife direct the information which

was used in drawing the will. I do not remember that any other person was present during these conversations except myself. Mr. Lyons and his wife, and I think Mr. John Noon, the other witness, was present at the time that the will was executed or signed. Q. Who furnished you with the data or directions contained in the will as to his property, and the disposition made of it? A. Mr. John Lyons and his wife gave me all the information I secured respecting the property which he had and the manner of disposition. Q. More particularly, state who gave you the directions contained in said will for the benefit of Michael Lyons, and who told you where Michael Lyons lived? A. That information was given me by Mr. John Lyons himself, although he and his wife were both in the room, and both talked about it while I was securing their information, but I could not say exactly to what extent each one of them gave me the information; but Mr. John Lyons told me where his brother lived, and who he was, and what he desired to give him by this will. * * * Q. Who was that person? A. That was Michael Lyons, of Genaveen, Ireland. Q. Did Michael Lyons, testator, tell you anything about his brother, or having a brother at that time? A. You mean John Lyons? Q. I mean John Lyons; yes. A. Yes, sir. Mr. John Lyons told me that he had a brother in Ireland, and told me where he was, and told me where he was and giving me the place, Genaveen. However, both John Lyons and his wife talked about this, and I cannot say just which one exactly gave me the more information about it. It was a subject of general talk between the two and myself at the time when I was preparing the will. Q. Did he ever tell you about having such a brother more than once, or only the one time? A. I cannot say about that, Mr. Bassel. I only remember that he told me that he had a brother named Michael Lyons, at Genaveen, Ireland, and told me what he desired to leave to this brother by the will, and whether we talked about it more than once I could not say, exactly. I do remember that we talked about it."

It will be observed that the testator's wife was present at the time the will was executed, and participated in giving the draftsman the information upon which the will was prepared, and, according to the witness, made no objection to the manner in which testator disposed of his property. By virtue of the third clause of the will Thomas Rogers Lyons was given a house and lot; by the fourth clause Virginia Drudy was given the sum of $100; the sixth clause gives Reginald Bradford $100; and by the seventh clause $1 in cash was given to Patrick Lyons, a brother of the testator. This leaves only the first, second and residuary clauses. The first and second clauses were for the payment of burial and funeral expenses out of the money of the testator in bank. The residuary clause is in the following language:

"All the rest and residue of my property and estate, real, personal and mixed, of every kind or nature whatsoever, not hereinbefore given, devised and bequeathed, I do hereby give, devise and bequeath to my wife, Mary E. Lyons."

If it had been the purpose of the testator to treat the certificates of deposit as property, and not as money, he would have naturally disposed of the same in the fourth clause, wherein he bequeathed 20 shares of the capital stock of the Home Bank for Savings to his wife. That this was not the purpose of the testator is shown by the evidence of the witness Johnson, who prepared the will. This witness, among other things, in referring to what transpired at the time he was obtaining the information upon which the will was based, said:

"In giving me the property, he spoke of his real estate and how he desired to dispose of it, and I think certain personal property, such as the stock in

the bank, and then asked that the 'money in bank,' using those words, be given to the person mentioned in the eighth clause of the will."

Common observation and experience teach us that one like the testator, not familiar with the technical meaning of banking terms, would naturally employ the term "money in bank," when referring to deposits of this kind, notwithstanding the fact that such deposits were not subject to check. He knew that from time to time he had deposited money in the bank, and it was most natural that he should have referred to the same as "money in bank." Indeed, any layman, and particularly one who had not had the benefit of an education, and, therefore, not acquainted with the technical terms employed in connection with banking, would, under similar circumstances, have employed the same language used by the testator. This, taken in connection with the fact that only the bank stock he possessed was bequeathed to the wife in the fourth clause, tends strongly to support the contention that it was the purpose of the testator to give to his brother all money that he had in the bank subject to check or by virtue of time deposits.

We do not deem it necessary to discuss the relevancy of the cases relied upon by appellant, feeling as we do that, when we consider the facts and circumstances connected with the execution of the will in question, the term "money in bank," employed by the testator, was used in a broad and not a technical sense, and that therefore it was his purpose, after paying certain expenses referred to in clauses 1 and 2 to bequeath to his brother any balance that might remain in the bank of the money that he had deposited subject to check, as well as any amount on time deposit.

We think the construction placed upon this will by the lower court was eminently proper. Therefore the ruling of that court is affirmed.