WILLIAM H. GRIFFITH ET AL., EXECUTORS, *vs.* HELEN
ROCKWELL ADAMS ET ALS.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The presumption that a bequest of shares of stock in a named corporation is general rather than specific is overcome when, as in the present case, the other portions of the will and codicil reflect the testator's intention to separate them from his other property so that they may be identified, and to give the legatee those identical shares.

A specific legacy vests upon the testator's death and carries with it all income or increment thereafter accruing upon it, unless a contrary intent appears.

When the proportionate beneficial interest of a stockholder in the surplus of a corporation is distributed to him in the form of a stock dividend, it merely increases the number of his shares without augmenting his interest in the corporate assets.

Income and dividends upon corporate stock, whether in cash, property or stock, which accrue between the date of the will and the death of the testator, do not become a part of a specific legacy of the stock or belong to the legatee, unless the testator manifests his intention to be otherwise.

The specific legatees in the present case claimed that the language

Griffith *v.* Adams.

of their bequests—"certain of the shares of corporation capital stock constituting a portion of my estate I give and bequeath as follows"—indicated an intent to dispose of definite parts of his estate and, therefore, to give the stock dividends which were declared before his death. *Held* that, in the absence of other support in the will for this construction, it could not be sustained; and that, since the specific legacies constituted only a part of the estate, the language in question was rather a mere prefatory statement of the disposition which the testator was about to make.

As indicating an intent that the specific legacies should carry the stock dividends, these legatees, consisting of several nephews and nieces of the testator and two charities, pointed to the fact that, unless the will were so construed, one niece and her husband, who were the sole residuary legatees, would benefit overwhelmingly in the distribution of the estate. *Held* that this inequality of distribution was in accord with the apparent desire of the testator, as disclosed by the will and the surrounding circumstances, to favor the residuary legatees above all the other beneficiaries.

The subjects of the specific legacies were shares of stock in three corporations. After two of them had declared dividends payable in common stock and the testator had made no alteration in his will, the third, through its board of directors, of which he was a member, recommended to its stockholders a dividend payable in preferred stock. Straightway, and before the stockholders had acted upon the plan, the testator executed a codicil to his will, in which he gave to each specific legatee of the original stock a proportionate amount of the new preferred stock. *Held* that it must be inevitably inferred from his conduct in thus making special provision for the dividend in the third company, that he did not believe, nor intend, that his will, as originally drawn, would give to the specific legatees the stock dividends subsequently declared in the other two companies; that the attempt of the specific legatees to draw a distinction between the dividends in common stock and in preferred stock was without merit; and that the republication of his will at the date of the codicil, except as modified therein, was a declaration of his then-existing intention that the specific legatees should receive the number of shares of stock in the first two companies which he had originally designated in his will.

Dividends paid in shares of stock of other corporations taken from surplus, are in legal contemplation precisely the same as cash dividends.

Argued November 11th, 1926—decided April 11th, 1927.

SUIT for the construction of the will of Phineas C. Lounsbury, late of the town of Ridgefield, deceased, brought to the Superior Court in Fairfield County and reserved by the court (*Marvin, J.*), upon an agreed statement of facts, for the advice of this court.

*David S. Day*, for the plaintiff.

*Charles D. Lockwood* and *Walter N. Maguire*, for the defendant Hattie F. Boyer and others.

*William H. Comley*, for the defendants William H. and Sarah E. Griffith.

*Martin J. Cunningham*, for the defendant Helen Rockwell Adams and others.

WHEELER, C. J.   Phineas C. Lounsbury died on June 22d, 1925, at Ridgefield, in the State of Connecticut, his last place of residence.   He left a will executed on February 8th, 1921, and a codicil thereto executed on December 4th, 1924.   By his will and codicil he bequeathed to certain of the defendants, exclusive of the residuary bequests, legacies totalling two hundred and ten shares of the capital stock, in the Preferred Accident Insurance Company out of five hundred; in the Worcester Salt Company ninety out of two hundred; in the West Virginia Pulp and Paper Company twenty-nine hundred and twenty-five of the common stock out of thirty-two hundred and about seven hundred and thirty-one shares of the preferred stock out of eight hundred, owned by him at his decease.   He had been for a long time, and continued to be until his decease, a director and vice-president of the Preferred Accident Insurance Company and owned two hundred and seventy-five of the seven thousand shares of its capital stock.   On April 18th, 1922, the company

declared a dividend payable in stock of the Atwood Fire Insurance Company which it owned, and Mr. Lounsbury received as his share one hundred and thirty-seven and one-half shares of the par value of $50 each, which he continued to own at his decease. On December 13th, 1922, the company increased its capital stock and declared a stock dividend payable in the increased stock, Mr. Lounsbury receiving as his share two hundred and seventy-five shares, making at this time his total holdings, five hundred and fifty shares, of which he owned five hundred shares at his decease; he had prior to his decease made a gift of forty shares to William H. Griffith, one of the residuary legatees. At the date of his will the market quotations of this stock ranged from the bid price, $475, to the asking price, $525. After the stock dividend, the bid price for the stock fell, in January, 1923, to $250 a share; the bid price shortly began advancing until, at Mr. Lounsbury's decease, it had risen to $600 a share. At the date of the codicil, December 4th, 1924, the market quotations ranged from $530 to $575 a share. Dividends of twenty-five per cent upon this stock were paid from 1916 to 1923, and in addition, in 1922, the stock dividend in the shares of the Atwood Fire Insurance Company; in 1923 and 1924, the dividend was eighteen per cent. The market quotation of the Atwood Company stock was on April 25th, 1923, at the time the testator received the one hundred and thirty-seven and one-half shares as a stock dividend, $98 a share; on December 4th, 1924, the date of the execution of the codicil, and at the date of the decease of the testator, it was $100 a share. On February 8th, 1921, Mr. Lounsbury was, and until his decease so continued, a director and the treasurer of the Worcester Salt Company and the owner of one hundred shares of its stock. On December 31st, 1922, through a stock

Griffith *v.* Adams.

dividend, he received one hundred additional shares, making his holdings two hundred shares; these he owned at the time of his decease. The market value of the stock at this time was $95 a share. At the date of the execution of the will it was $100 bid, $105 asked; at the date of the execution of the codicil it was $94 bid, $100 asked; and at the date of the stock dividend it was $140 bid, $148 asked. On all of the dates we have referred to, Mr. Lounsbury had knowledge of the corporate action in relation to the declarations and payments of all of these stock dividends and possessed a general knowledge of the financial condition of both the Preferred Accident Insurance Company and the Worcester Salt Company, and was acquainted with the approximate prices in the market of their stock. The West Virginia Company increased its capital stock by the creation of six per cent cumulative preferred stock of the par value of $100 a share, and through its directors caused to be distributed to their common share stockholders a portion of this increase as a stock dividend, which gave Mr. Lounsbury eight hundred shares of the preferred stock which he held at his decease.

The clauses of the will comprising the several bequests of these stocks are in their terms mere bequests of stated numbers of shares of stock of these corporations and, if their terms are regarded apart from the other provisions of the will and codicil, must be held to be general legacies. *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 363, 125 Atl. 871; 4 Schouler on Wills (6th Ed.) §3059; 28 R. C. L. p. 293, §268. Yet these clauses when read, as they must be, in connection with the other portions of the will and codicil, clearly overcome the generally applied presumption that legacies are general rather than specific, and reflect the intention of the testator to separate these

stocks from his other property in such a way that they can be identified, and to give the several legatees the identical shares of stocks so bequeathed. *Fidelity Title & Trust Co.* v. *Young, supra; Brainerd* v. *Cowdrey,* 16 Conn. 1; note to 6 A. L. R. 1386; *Ferreck's Estate,* 241 Pa. St. 340, 88 Atl. 505. We are required to determine two questions: Are the beneficiaries of the specific legacies of a specified number of shares of the Preferred Accident Insurance Company and the Worcester Salt Company entitled to the stock dividends declared by these companies after the execution of the testator's will and prior to his decease? And are they entitled to the preferred shares of stock of the Atwood Fire Insurance Company received by the testator after the execution of his will and prior to his decease as a stock dividend upon the shares of stock owned by him in the Preferred Accident Insurance Company? These specific legacies vested at the testator's death, since no contrary intention appears in will or codicil. *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 231, 50 Atl. 750. Specific legacies may only be satisfied by the very article bequeathed, in this case the shares of stock. Out of this legal fact, coupled with the further fact that the shares vest at the decease of the testator, has developed the principle that the specific legacy carries with it, unless the will shows a contrary intention, all of the income or increment which may have accrued upon it after the testator's decease. *Phelps* v. *Farmers & Mechanics Bank,* 26 Conn. 269, 272; *Loring* v. *Woodward,* 41 N. H. 391, 394; 4 Schouler on Wills (6th Ed.) §3086; 1 Cook on Corporations (7th Ed.) §300.

The owner of stock in a corporation has an interest in the assets of the corporation in the proportion his share of the capital stock bears to the entire capital stock. When an amount of cash or property equal

to the par value of the stock, has been taken from the surplus of the company and added to the capital, a stock dividend may be legally declared and paid to stockholders proportionately to their stock holdings. "The profits . . . until separated from the stock by declaring a dividend, are mere increment and augmentation of the stock." *Phelps* v. *Farmers & Mechanics Bank, supra.* The beneficial interest in the surplus as a part of the assets of the company belongs proportionately to the stockholders subject to the payment of its debts, and their proportional share vests in the specific legatees of the stock. When the whole or any part of it is distributed to the stockholders by way of a cash dividend, they are given their proportional share of the distributed surplus. When it is distributed to them as a stock dividend, it merely increases the number of their shares without augmenting their interest in the assets of the company. *Boardman* v. *Mansfield,* 79 Conn. 634, 640, 66 Atl. 169. Since the accumulated profits or surplus are but the increment and augmentation of the stock, the stockholder, while he lives, has his proportional interest in the surplus, and all dividends of whatever character, cash, property, or stock dividends, belong to him. A legatee to whom he has bequeathed a part of his stock is not entitled to the proportional part of the stock which his specific stock legacy bears to the entire capital stock, since he has no vested interest in the specific legacy until the decease of the testator. The rule is general, that income and dividends, whether in cash, property, or a stock dividend, which accrue prior to the decease of the testator belong to him, and do not either become a part of the specific legacy, or belong to the specific legatee, unless a contrary intention is manifest in will or codicil. *Hicks* v. *Kerr,* 132 Md. 693, 104 Atl. 426; *Matter of Brann,* 219 N. Y. 263,

114 N. E. 404; 40 Cyc. 1549; 2 Cook on Corporations (8th Ed.) §301. The specific legatees reverse the presumption and argue that "in the absence of an unmistakably clear expression of the testator to the contrary," these specific legatees are entitled, after the stock dividends in these companies, to two shares for every share of stock referred to in the bequests of stock in these companies. Because the shares of stock of the capital stock of a company are increased by the distribution of the surplus in the form of a stock dividend and the original shares of stock bore the same relation to the assets that the increased shares bear, the specific legatees argue that there has been no change in the capitalization and the case is governed by our own case, *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 125 Atl. 876, and the English case, *In re Clifford,* L. R. (1912) 1 Ch. Div. 29, which we there cited. The cases are not applicable. They concerned a situation where, after the execution of the will and prior to the decease of the testator, the par value of the shares of stock of a company had been reduced and the original shares, though multiplied in number, were clearly traceable into the increased shares. The change in the capitalization had changed the form of the bequests of shares of stock in the company, but had not changed their identity. *Goode* v. *Reynolds,* 208 Ky. 441, 271 S. W. 600. In value, capital and surplus were unchanged; whereas Mr. Lounsbury's stock holding had been increased by way of a stock dividend, which presumptively had been paid for out of the surplus, while his original shares had remained unchanged and of the same par value. In the *Fidelity Co.* case there was identity between the original shares and the increased shares; in this case the identity is not apparent, in truth it does not exist. Nor has there been an ademption or a substitution of

other property. The testator had the right, while he lived, at his sole discretion, to dispose of any shares of stock owned by him; he did dispose of fifty shares of stock of the Preferred Company. The specific legatees could not claim ownership or interest in the stock so disposed of. If any of these companies whose shares of stock he bequeathed had declared in the testator's lifetime a dividend in cash, or property, or securities held by them out of their surplus, the specific legatees of stock in these companies could not claim a proportionate share of this dividend. A stock dividend paid for out of surplus and distributed to stockholders does not differ from any other form of dividend. The argument of the specific legatees assumes that in some way their interest in the stock bequeathed to them arose upon the execution of Mr. Lounsbury's will, when in fact it did not arise until his decease. Whatever the effect of the reduction of the value of the shares of stock bequeathed by the payment of the stock dividend upon the question of the intention of the testator, it can have no effect upon the determination of the rights of the specific legatees to have their specific legacies carry with them a proportionate share in the stock dividend distributed to the testator while living. Our inquiry narrows to the ascertainment of whether the specific legatees have established that the will and codicil of Mr. Lounsbury, when read together, reveal his intention that the beneficiaries under the specific legacies should take not only the number of shares of stock designated by his will, but also any shares of stock received by him as a stock dividend between the date of his will and of his decease. In supporting this burden, the specific legatees refer to only one clause of the will, the introductory statement to the paragraph creating these specific legacies, viz.: "Certain of the shares of cor-

poration capital stock constituting a portion of my estate I give and bequeath as follows." This language, they urge, discloses the intention of the testator to be, to express the idea that he was disposing of "definite parts of his estate." Nothing else in the will to which they point tends to substantiate this construction. The words may bear another construction. The specific legacies disposed of the smaller part of the testator's estate and he prefaced the recital of the several bequests with this general statement of what he was about to do. No other construction of this language seems to us permissible when article second is read, either alone or in connection with the other provisions of the will, in the light of the surrounding circumstances. There is nothing else in the will to which our attention is directed which in the slightest degree tends to evidence the construction that the testator intended by these specific bequests to dispose of "definite parts of his estate."

Then the specific legatees point to the inequality of the testator's bounty, if the claims of the residuary legatees should prevail, favoring, they assert, in overwhelming manner one niece and her husband above his other nephews and nieces and two worthy charities. The will itself, read in connection with the inventory of Mr. Lounsbury's estate, shows that he did regard these residuary legatees with higher favor than the specific legatees who make this claim. If all of their contention were upheld, it would still be true that the residuary legatees were given by the testator a far larger amount of the testator's estate than any other legatees, and in the codicil he inserted a provision to carry his bounty to them to their children in the event of their predeceasing the testator. Whatever weight these may have in the ascertainment of the testator's intention, they would appear to support the conclusion

which favored rather than disadvantaged the residuary legatees.

The specific legatees have failed to show that the testator intended these specific legacies to carry with them stock dividends distributed to the testator between the date of his will and his decease. The ascertainment of the testator's intention upon the points in controversy need not be rested upon presumption. Standing by itself, we should be unable to hold that the will expresses any clear intention on the part of the testator as to what disposition should be made of a stock dividend distributed between the date of the will and the decease of the testator. The codicil, executed nearly four years after the execution of the will, removes, as we think, any possible doubt as to the testator's intention. To each of the specific legatees the testator had bequeathed certain shares of stock of the West Virginia Pulp and Paper Company. The board of directors of this company, on November 25th, 1924, adopted resolutions recommending to the stockholders an issue of six per cent cumulative preferred stock and that a stock dividend be declared payable in the preferred stock at the rate of one share of preferred to each four shares of the common. The notice was duly sent the stockholders. The testator was a director and had personal knowledge of this proposed plan; after the action of the directors and before that of the stockholders, he caused to be drawn a codicil to his will which he executed nine days after the action of the directors. The first section of the codicil is as follows: "FIRST. In said will I have made certain bequests of the capital stock of West Virginia Pulp & Paper Company, a Delaware Corporation, hereinafter referred to as 'West Virginia Company.' The directors of said Company have recommended that a stock dividend of six per cent preferred stock to be paid to

holders of common stock in the ratio of one share of said six per cent preferred stock for each four shares of common stock held. In the event that said preferred stock dividend shall have been paid and received by me prior to my death, or by my executors after my death and prior to the distribution of my estate, then and in that event I wish and direct that all the legacies of common stock of said West Virginia Company given and bequeathed in my said will be increased so as to carry with them the corresponding amount of said new preferred stock that may be received as a stock dividend; and the respective quotas of such preferred stock dividend I give and bequeath to the several legatees respectively who receive the common stock. In the event that the quota of any legatee should include a fractional part of a share of such preferred stock received as a dividend, I hereby authorize, empower and direct my executors to increase each of such legatees' bequest to a whole share."

The testator's share of the proposed preferred stock issue would be eight hundred shares, sufficient to make their disposition of immediate concern to him as well as to the specific legatees. He was a man of very considerable business experience and familiar, by daily usage, with corporate finance. The phraseology indicates, unquestionably, that it was drawn by a competent legal adviser. It specifically provides for the distribution of the preferred stock proportionately among the legatees, exclusive of the shares bequeathed in the residuary clause, to whom his will had made bequests of twenty-nine hundred and fifteen shares of the thirty-two hundred shares of common stock owned by him. Undoubtedly this reflected his belief that his will did not provide for such a distribution. His solicitude is manifest in his making the codicil in advance of the action of the stockholders in declaring

the stock dividend.  It evidences that both the testator and draftsman had before them the will at or about the time the draft of the codicil was made.  The specific legatees of the Preferred Company and the Salt Company were also legatees of stock in the West Virginia Company.  The testator held official position in these companies and was a large stockholder in the first and a substantial stockholder in the second.  The stock dividends in these companies were declared before the execution of the codicil.  The fact that the testator executed this codicil signifies his belief that it was required in order to give to these legatees a proportional part of the proposed stock dividend of the preferred stock of the West Virginia Company.  It also signifies that he did not intend by the specific legacies in his will of shares of stock of this company to include the shares of preferred stock which might subsequently be declared.  The inference is also inescapable that the testator believed that the specific legacies of the shares of the Preferred and Salt companies stocks would not carry stock dividends subsequently declared by these companies.  Had he believed otherwise he would in the codicil have made the will to conform to his intention.  The fact that he did not so provide is an almost certain indication that he did not intend that any of these specific legatees should share in stock dividends declared subsequent to the execution of his will.  The codicil discloses the intention of the testator at the time of its execution; it also discloses, as a necessary inference, that he did not intend to express in his will a contrary intention.  The terms of the will too show that he did not do so.

The specific legatees attempt to avoid the inevitable inference of the testator's intention in the making of the codicil by pressing the proposition that there is a distinction between a stock dividend of common shares

and one of preferred shares, that is, the specific legacy of common shares would carry shares in a stock dividend of common stock, but not in one of preferred stock. If this distinction were sound it would follow, in the absence of the codicil, that the legatees of the shares of the West Virginia Company would receive no part of the stock dividend in the preferred shares, while the legatees of the stocks of the other two companies would share in these subsequently declared stock dividends and thus have had their holdings in these companies doubled. The argument as to the common stock which we earlier developed is equally applicable to the preferred stock. A rule of law which sustained the distinction these legatees advance would conflict with the ordinary business experience and business judgment. We know of no instance where such a distinction has been adopted and we think it intrinsically unsound. The codicil concludes: "THIRD. Except as herein specifically modified, I hereby confirm, republish and redeclare my said will of February 8, 1921." In law this was a republication of the will. Codicil and will then became "expressions of a single testamentary act" as of the date of the codicil. The republication was as though the will had been "rewritten, re-executed, and republished at the date of the codicil." *Shey's Appeal,* 73 Conn. 122, 124, 46 Atl. 832; *Carpenter* v. *Perkins,* 83 Conn. 11, 18, 74 Atl. 1062; *Giddings* v. *Giddings,* 65 Conn. 149, 160, 32 Atl. 334.

Since the only modification of the will in the codicil was as to shares of stock of the West Virginia Company, it follows that the republication of the will subsequent to the distribution of the stock dividends in the Preferred and Salt companies stocks is a declaration of the testator's intention that the specific legatees of the stocks of these companies are to receive the

number of shares specified in the will and in the possession of the testator at his decease. Since the intention of the testator to give the specific legatees any share in subsequently declared dividends cannot be found in the will, its republication reaffirms the intention expressed in it; it does not indicate a contrary intention. The testator continued to hold substantially the entire stock dividends declared in the stock of these two companies until his decease and in all that time left his will unchanged as to the specific legacies of stock in these companies. The fact that he had the opportunity to change his will in this particular and did not, is persuasive evidence that he did not intend such an end. Whatever inference might be drawn from an inequality in the value of the legacies at the date of the will and the date of the testator's decease, redounds in this case to the advantage of the residuary legatees; the shares of the Preferred Company were in excess, while those of the Salt Company were somewhat lower, in value at the decease of the testator than at the making of the will.

The remaining question, as to whether the specific legatees are entitled to their proportional share of the shares of stock of the Atwood Fire Insurance Company which were received by the testator as a dividend upon his stock in the Preferred Accident Insurance Company, is determined by the principle earlier stated. Dividends paid in shares of stock of other corporations taken from the surplus are in legal contemplation precisely the same as cash dividends. *Union & New Haven Trust Co.* v. *Taintor,* 85 Conn. 452, 83 Atl. 697.

The Superior Court is advised that we answer question one, no; question two, that the defendants are entitled to receive the number of shares of the Preferred Accident Insurance Company stated in said will and

codicil, and no more; question three, that the defend-
ants are entitled to receive the number of shares of the
Worcester Salt Company stated in said will and cod-
icil, and no more.

No costs in this court will be taxed in favor of any
of the parties.

In this opinion the other judges concurred.