BEVERLY ROSENFELD, EXECUTRIX (ESTATE OF DOROTHY R. GOLD) *v.* ROSLYN FRANK ET AL.

BEVERLY ROSENFELD *v.* ROSLYN FRANK ET AL.
(13345)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and HULL, Js.

Argued May 10—decision released August 9, 1988

*Linda M. Guliuzza,* for the appellant (plaintiff in both capacities).

*Barbara S. Miller,* for the appellees (defendant Bernice Goldbloom et al.).

CALLAHAN, J. This is an action involving the construction of a will and codicil executed by Dorothy R. Gold (testatrix) as it relates to the distribution of certain shares of stock devised by the testatrix to her grandchildren. The plaintiff, daughter of the testatrix, is an executrix and residuary legatee of the testatrix's will dated December 13, 1973. The defendants, Roslyn Frank and Bernice Goldbloom, are also daughters of the testatrix and are executrices and residuary legatees. The defendants, Susan Goldbloom and Michael

Goldbloom (defendant grandchildren), are two of eight grandchildren of the testatrix to whom she bequeathed stock.

The plaintiff filed this appeal from a judgment of the trial court, wherein the court found that, by the terms of the will, the grandchildren were specific legatees and therefore entitled to the additional shares of stock resulting from stock splits occurring after the execution of the will, as well as the original number of shares bequeathed to them in the testatrix's will. The principal issue raised by the plaintiff on appeal is whether the trial court erred in failing to consider the legal effect of the execution of a codicil by the testatrix after the number of shares of stock she owned and bequeathed in her will increased due to stock splits.

The facts relevant on appeal were stipulated by the parties as follows: On June 16, 1983, the testatrix died a resident of Bridgeport. Both her last will and testament executed December 13, 1973, and a codicil thereto executed December 17, 1979, were admitted to probate by the Probate Court for the district of Bridgeport. The testatrix's daughters, Beverly Rosenfeld, Bernice Goldbloom and Roslyn Frank, were appointed executrices of the estate by the Probate Court in accordance with article four of the testatrix's will.

The will contains five articles. Relevant to the present appeal is article three which makes bequests of stock to each of the testatrix's eight grandchildren. The article is divided into sections (a) through (h), each of which names a single grandchild as the legatee of the stock owned by the testatrix in one of eight corporations. In contention in the present case are sections (d) and (g) of article three which state as follows: "I give, devise and bequeath the following to my grandchildren as herein set forth . . . . (d) To my granddaughter, Susan Goldbloom, 180 shares of The Southern Connect-

icut Gas Company stock . . . . (g) To my grandson, Michael Goldbloom, 159 shares of Texas Gas Transmission stock . . . ."

When the testatrix executed her will she owned the exact number of shares she had listed in each section of article three. Subsequent to the execution of the will and prior to the execution of the codicil, however, changes occurred in the corporate structure of the companies whose stock was owned by the testatrix. In particular, in June, 1974, the stock in Southern Connecticut Gas Company, which was bequeathed to Susan, split three for two, and the corporation also subsequently changed its name to Connecticut Energy Corporation.[1] In July, 1979, the stock of Texas Gas Transmission, which was bequeathed to Michael, split two for one.[2] Thus, when the testatrix executed the codicil on December 17, 1979, she owned 270 shares of Connecticut Energy Corporation and 318 shares of Texas Gas Transmission. The number of shares the testatrix owned in these two corporations remained the same until her death.[3] The codicil executed on December 17, 1979, made no reference to the additional shares in either corporation resulting from the stock splits. Rather, initially it revoked an unrelated provision concerning real property in article two of the will and substituted a paragraph not in issue in this case. Article two of the codicil, however, reads: "In all other

[1] The fact that the Southern Connecticut Gas Company changed its name is not a point of contention between the parties.

[2] In January, 1983, Texas Gas Transmission changed its name to Texas Gas Corporation, and in May, 1983, became Texas Gas Resources Company. This change in name is not a point of contention between the parties.

[3] Following the testatrix's death, further activity in the stocks in question occurred. Namely, in June, 1983, the board of directors of Texas Gas Resources declared a stock dividend. In September, 1983, the corporation merged and became a wholly owned subsidiary of CSX Corporation, exchanging each share of Texas Gas Resources for .684 shares of CSX. CSX shares split three for one in October, 1983. Finally, in May, 1984, Connecticut Energy Corporation declared a two for one stock split.

respects, I ratify and confirm and validate my Last Will and Testament of December 13, 1973, except as altered by this Codicil.''

On October 10, 1984, the Probate Court determined that the additional shares resulting from the stock split passed with the original shares bequeathed to the grandchildren and ordered that the executrices "execute stock powers." The plaintiff appealed from this order and also filed suit in the Superior Court asking for a construction of the will. Since the parties and the issues were the same, the will construction suit and the appeal from the order of the Probate Court were, upon the defendants' motion, consolidated for trial. The question raised in the trial court was whether Susan and Michael, the defendant grandchildren, were entitled to receive 270 shares of Connecticut Energy Corporation stock and 318 shares of Texas Gas Transmission stock respectively, the number of shares owned by the testatrix at the time of her death, rather than the number originally bequeathed to them in the will. The trial court reviewed the case de novo and upheld the decision of the Probate Court in favor of the defendants. The court held that under the will the grandchildren were specific legatees, and therefore, entitled to the additional shares resulting from the stock split over and above the amount stated in the will. The plaintiff thereafter filed an appeal in the Appellate Court which was transferred to this court pursuant to Practice Book § 4023. We find no error.

The principal claim raised by the plaintiff on appeal is that the trial court erred in concluding that the defendant grandchildren were entitled to the shares of stock resulting from the stock splits because the court failed to consider the legal effect of the codicil executed after the stock had split. The gravamen of the plaintiff's claim is that the codicil, which makes no provision for the increase in shares resulting from the

splits, evinces a testamentary intent by the testatrix to limit the grandchildren's bequests of shares of stock to the number stated in the will. The plaintiff bases her claim on the fact that the codicil has the effect of republishing the will, and thus, the testatrix's testamentary intent must be viewed exclusively from the date of its execution. According to the plaintiff, when the testatrix executed the codicil she presumably reviewed her entire estate, including the increase in shares resulting from the stock split, and her failure to make provision for the increased number of shares in the codicil is conclusive evidence that she intended to bequeath only the number of shares specifically stated in her will. We disagree.

Generally, execution of a codicil operates as a republication of a will. *First National Bank & Trust Co.* v. *Baker*, 124 Conn. 577, 583, 1 A.2d 283 (1938); *Griffith* v. *Adams*, 106 Conn. 19, 32, 137 A. 20 (1927); *Carpenter* v. *Perkins*, 83 Conn. 11, 18, 74 A. 1062 (1910); *Shey's Appeal*, 73 Conn. 122, 124, 46 A. 832 (1900); *Giddings* v. *Giddings*, 65 Conn. 149, 160, 32 A. 334 (1894); 79 Am. Jur. 2d, Wills § 696. While republication acts to treat the will as if it had been "rewritten, re-executed, and republished at the date of the codicil"; *Griffith* v. *Adams*, supra, quoting *Shey's Appeal*, supra; *Carpenter* v. *Perkins*, supra; *Giddings* v. *Giddings*, supra; we have recognized that this principle is subject to the limitation that the intention of the testatrix must not be defeated by its application. *First National Bank & Trust Co.* v. *Baker*, supra; see also 79 Am. Jur. 2d, Wills § 696. In *First National Bank & Trust Co.* v. *Baker*, supra, this court held that the republication of a will and codicil by a subsequent codicil did not have the effect of converting a bequest to a person named therein and described as a nephew, who had died after the execution of the will and a codicil, but prior to the testatrix's execution of a final codicil, into a bequest to the nephew's son who bore the same name.

The nephew's son in *First National Bank & Trust Co.* argued that, although the testatrix's final codicil failed to state that he was to take the bequest originally devised to his deceased father, the bequest, nonetheless, belonged to him because the final codicil had the effect of republishing the will and earlier codicil, thereby making a new will on the date of its execution. Since the will was, in effect, remade after his father's death, the son asserted that the testatrix, who is presumed to have wanted to avoid a nugatory gift, intended the bequest for him. Rejecting the son's argument, this court stated that while republication of the will and codicil by the final codicil was in effect the making of a new will, "[t]hat does not mean, however, that in determining the construction of the instrument the development of the testamentary intent through the will and the codicils and the circumstances surrounding their execution are to be disregarded and the whole will read as though it were all originally made at the date of the codicil. 'From a will and its several codicils, like a statute with its later amendments, the maker's full intention is to be gathered.' " Id., 583, quoting *Giddings* v. *Giddings,* supra. Looking to both the language of the will and extrinsic circumstances surrounding the execution of the codicil, the court rejected the nephew's son's argument that, solely because the testatrix had executed a codicil after his father's death, he was the intended beneficiary. Particularly significant was evidence of the fact that the testatrix, prior to the execution of the final codicil, recognized that changes to her will would have to be made in order to bequeath the gift originally intended for the deceased father to his son, but she, nonetheless, failed to make the changes in the final codicil when she had the opportunity.

Analysis of *Griffith* v. *Adams,* supra, which is also cited by the plaintiff for the proposition that the testatrix's intent must be determined solely from the

facts as they existed as of the date of the execution of the codicil, shows that our holding was, in fact, based in part on the language of the will and the intention of the testator expressed therein. In *Griffith,* the testator had made a bequest of stock in three different corporations. After the will was executed two of the corporations declared common stock dividends. The third corporation, of which the testator was a member of the board of directors, recommended a preferred stock dividend. Prior to stockholder authorization of the preferred stock dividend, the testator executed a codicil to his will in which he gave to each specific legatee of stock in the third corporation a proportionate share of the new preferred stock. The codicil did not mention the dividends declared by the other two corporations in which the testator had bequeathed stock. On the basis of the fact that the codicil provided for the dividends of the third corporation and failed to mention the dividends paid by the other two corporations, we held that the intention of the testator on the date he executed the codicil was to limit the shares bequeathed to the legatees of the first two corporations to the number specified in his will. In so holding, however, we stated that "[s]ince the intention of the testator to give the specific legatees any share in subsequently declared dividends [in the first two corporations] cannot be found *in the will, its republication reaffirms the intention expressed in it; it does not indicate a contrary intention."* (Emphasis added.) Id., 33. This language clearly indicates that had there been evidence in the will showing that the testator in *Griffith* intended to bequeath the stock dividends of the first two corporations to the legatees we would have held that they were entitled to receive them.

Moreover, in *New York Trust Co.* v. *Doubleday,* 144 Conn. 134, 128 A.2d 192 (1956), our holding that the testator intended to limit the number of shares

bequeathed to the amount originally stated in the will was based on both the language of the will and a codicil that, like the codicil in *Griffith,* made changes in the bequests of some stocks that had split after the execution of the will but did not mention the stocks in issue that had also experienced splits.

Unlike the wills and codicils in the cases discussed, the will and codicil in this case do not indicate an intention on the part of the testatrix to limit the number of shares bequeathed to the legatees to the number of shares originally bequeathed in her will. Rather, the codicil in the present case, as distinguished from the codicils in both *Griffith* v. *Adams,* supra, and *New York Trust Co.* v. *Doubleday,* supra, is silent as to the testatrix's stockholdings; it does not bequeath additional shares of stock resulting from a stock split in one corporation while failing to do so with respect to the stock of other corporations whose shares had also subsequently increased in number due to a split. The only change the testatrix made to her will by virtue of the codicil involved the unrelated devise of real property. Accordingly, the intention of the testatrix to limit the bequests of stock made to her grandchildren to the number of shares stated in her will cannot be ascertained from the codicil.

Moreover, contrary to *First National Bank & Trust Co.* v. *Baker,* supra, there is no extrinsic evidence on the record in the present case indicating that the testatrix felt it necessary to make further changes in her will in order to bequeath the additional shares of stock to her grandchildren and yet failed to do so when she executed the codicil. Unable to find an intention to limit the shares of stock to the amounts originally stated in the will either in the codicil itself or in the circumstances surrounding its execution, we turn to the testatrix's will to discern her intent.

There are two factors in article three of the testatrix's will that lead us to conclude that she intended the defendant grandchildren to receive the additional shares of stock resulting from the stock split as well as the number originally bequeathed in her will. First, based on sections (a) through (h) of article three of her will, the testatrix clearly intended that upon her death each one of her eight grandchildren was to receive her total ownership interest in the particular corporation whose stock was bequeathed to them. This can be deduced from the fact that the will gave each grandchild all the stock the testatrix owned in a particular corporation. Susan Goldbloom was to receive all the stock the testatrix owned in Connecticut Energy Corporation, Michael Goldbloom was to receive all the stock owned by the testatrix in Texas Gas Transmission; and by other provisions each of the remaining grandchildren was to receive all the stock owned by the testatrix in other specified corporations. By finding that the defendant grandchildren are entitled to the additional shares of stock resulting from the stock splits, we are merely adhering to the testatrix's obvious intent as expressed in her will to devise her total interest in each of the corporations in which she held stock to each of her grandchildren.

In addition to the fact that sections (a) through (h) of article three of the testatrix's will bequeath to each grandchild the testatrix's complete interest in a particular corporation, that article also provides as follows: "In the event that prior to my death I have divested myself of any of the above shares of stock, I direct that my Executrices hereinafter named give unto my said grandson or granddaughter, as the case may be, *the amount equivalent to the value of said shares had they been held in my estate at the time of my death.*" (Emphasis added.) By providing that, even if she had divested herself of the bequeathed shares prior to her death, her

grandchildren were, nevertheless, to receive an amount equivalent to the value of the stock at the time of her death, the testatrix made it quite clear that the grandchildren were to receive any accretion to the bequeathed shares. As the plaintiff herself conceded at oral argument, the language of this clause is very persuasive that the testatrix intended that any additional shares resulting from a stock split pass to her grandchildren.

Moreover, this clause operates as an anti-ademption clause indicating that the testatrix intended to make a specific rather than a general bequest.[4] " 'The fundamental distinction between general and specific legacies is that the former may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing, or things, while the latter are gifts of particular specified things, or of a specific fund or a defined portion thereof.' " *Burnham* v. *Hayford,* 141 Conn. 96, 102, 104 A.2d 217 (1954), quoting *Weed* v. *Hoge,* 85 Conn. 490, 494, 83 A. 636 (1912); *Brainerd* v. *Cowdrey,* 16 Conn. 1, 6 (1843); 57 Am. Jur. 935, 936. Generally, the legatee of a specific bequest of shares

---

[4] In cases similar to the one at hand where there has been a stock split subsequent to the execution of a will, the courts have used two basic approaches to determine whether the additional shares resulting from a split pass to the legatee in addition to the amount stated in the will. Some courts hold that whether the additional stock should pass to the legatee depends solely upon whether the bequest is specific or general. That was the approach used by this court in *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 125 A. 871 (1924). See also *In re Mandelle's Estate,* 252 Mich. 375, 233 N.W. 230 (1930); *In re Estate of Leonard,* 467 S.W.2d 84 (Mo. 1971); *Shriners Hospitals for Crippled Children* v. *Emrie,* 347 S.W.2d 198 (Mo. 1961); *Chase National Bank* v. *Deichmiller,* 107 N.J. Eq. 379, 152 A. 697 (1930); *In re Kirkwood,* 6 Ohio App. 2d 146, 216 N.E.2d 895 (1966); *Clegg* v. *Lippold,* 68 Ohio L. Abs. 590, 123 N.E.2d 549 (1951); *Fisher* v. *Paine,* 210 Or. 429, 311 P.2d 438 (1957); *Warner* v. *Baylor,* 204 Va. 867, 134 S.E.2d 263 (1964); annot., 46 A.L.R.3d 7. An increasing number of courts, however, have departed from the older "specific-general bequest" approach, and instead base their holdings on the perceived intention of the testator with respect to the split shares. See *Estate of Helfman,* 193 Cal. App. 2d 652, 14 Cal. Reptr. 482 (1961); *In re Vail's Estate,* 67 So. 2d 665

of corporate stock, as distinguished from the legatee of a general bequest, is entitled to any accretions to the bequeathed shares which are received by the testatrix, as a result of a stock split, subsequent to the making of such bequest. See *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 125 A. 871 (1924); annot., 46 A.L.R.3d 7, 24. The rationale behind this rule is that "[a] stock split in no way alters the substance of the [testatrix's] total interest or rights in the corporation. . . . [It] is merely a dividing up of the outstanding shares of a corporation into a greater number of units without disturbing the stockholder's original proportional participating interest in the corporation." *Egavian* v. *Egavian,* 102 R.I. 740, 746, 232 A.2d 789 (1967), quoted in *Bostwick* v. *Hurstel,* 364 Mass. 282, 287, 304 N.E.2d 186 (1973); see also *Fidelity Title & Trust Co.* v. *Young,* supra, 368–69; *Jacobs* v. *Button,* 79 Conn. 360, 65 A. 150 (1907). Thus, because the gift merely changes in "name and form" but not in "substance," the additional split shares should pass to the legatee designated to receive the original shares in order to give him or her the specific thing which

(Fla. 1953); *Allen* v. *National Bank of Austin,* 19 Ill. App. 2d 149, 153 N.E.2d 260 (1958); *Bostwick* v. *Hurstel,* 364 Mass. 282, 304 N.E.2d 186 (1973); *In re Harvey Estate,* 110 N.H. 484, 272 A.2d 603 (1970); *In re Doonan Estate,* 110 N.H. 157, 262 A.2d 281 (1970); *Egavian* v. *Egavian,* 102 R.I. 740, 232 A.2d 789 (1967); *Estate of Barslow,* 128 Vt. 192, 195, 260 A.2d 374 (1969); annot., 46 A.L.R.3d 7.

This court, in *New York Trust Co.* v. *Doubleday,* 144 Conn. 134, 128 A.2d 192 (1956), looked only to the testator's intent to determine whether the additional shares of stock resulting from a stock split were to pass to the legatees. While the "specific-general bequest" approach was not used, we did not expressly reject that approach. It is not necessary for us to adopt or reject either approach in the present case as the additional shares of stock would pass to the original legatees regardless of which approach is used. The fact that the testatrix intended to make a specific bequest does, however, bolster our finding that the testatrix intended the shares resulting from the stock split to pass to her grandchildren in addition to the shares originally bequeathed in her will. Thus, the plaintiff's contention, that a determination of whether the stock bequest is specific or general is "irrelevant" is incorrect.

the testatrix intended that he or she should have. See *Fidelity Title & Trust Co.* v. *Young,* supra; *Jacobs* v. *Button,* supra. If the legatee is not awarded the additional shares, the value of the specific bequest would be substantially reduced, contrary to the testatrix's intent.[5] *Bostwick* v. *Hurstel,* supra; *In re Kirkwood,* 6 Ohio App. 2d 146, 154, 216 N.E.2d 895 (1966). Consequently, if the testatrix in this case intended to make a specific bequest she would have presumed that any additional shares resulting from a stock split would pass with the original shares bequeathed in her will, thereby making it unnecessary for her to provide further for their disposition in her codicil.

In determining whether a bequest of stock in a named corporation is general or specific, there exists a presumption in favor of finding a general legacy. *Fidelity Title & Trust Co.* v. *Young,* supra, 364. "Two reasons are given for this [presumption]; to prevent an ademption in case the testator parts with the stock before his death, and to secure uniformity of contribution in case of a deficiency of assets." Id., citing *Dryden* v. *Owings,* 49 Md. 356 (1878); *Ives* v. *Canby,* 48 F. 718 (D. Del. 1891); *Johnson* v. *Conover,* 54 N.J. Eq. 333 (1896);

---

[5] Historically, stock dividends have been treated like cash dividends. Therefore, unlike shares resulting from a stock split, stock dividends were considered to increase the stockholder's proportional share in a corporation and were not considered to be part of a specific legacy. In *Griffith* v. *Adams,* 106 Conn. 19, 25, 137 A. 20 (1927), we stated that "income and dividends, which accrue prior to the decease of the testator belong to him, and do not either become a part of the specific legacy or belong to the specific legatee, unless a contrary intention is manifest in the will or codicil." Accord *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 125 A. 871 (1924); see annot., 46 A.L.R.3d 7, 14, 69–78. Thus, although the legacy in *Griffith* was a specific bequest, we held that the legatees were not entitled to stock dividends accruing after the testator's will had been executed. But see annot., 46 A.L.R.3d 7, 14, 65–69 (some courts have abandoned the historic treatment of stock dividends as cash dividends and have allowed them to pass to the legatee because, like an increase in shares resulting from a stock split, their issuance leaves the shareholder's proportionate interest in the corporation undisturbed).

*Giddings* v. *Seward,* 16 N.Y. 365 (1857); *Perry* v. *Maxwell,* 17 N.C. (2 Dev. Eq.) 488 (1834). When the reasons, however, behind the presumption do not exist and or "a contrary intent appears from the will"; *Fidelity Title & Trust Co.* v. *Young,* supra; the presumption will not apply. Thus, "a provision against ademption is held to be sufficient evidence of an intent to make a specific gift." Id., citing *Mowry, Petitioner,* 16 R.I. 514 (1889); *In re Foote,* 39 Mass. (22 Pick.) 299 (1839). In this case, the clause in article three of the testatrix's will is clearly a provision against ademption; even if during her life the testatrix had divested herself of any of the stock she had bequeathed to her grandchildren, the legacy would not lapse because article three entitles them to the value of the shares had they been held in her estate on the day she died.[6]

Furthermore, to ascertain if the presumption is overcome by the testator's intent to make a specific bequest only, " 'a very slight indication of an intention to give shares then in his ownership is enough to make the legacy specific . . . .' " *Fidelity Title & Trust Co.* v. *Young,* supra, 366, quoting *Thayer* v. *Paulding,* 200 Mass. 98, 101, 85 N.E. 868 (1908), quoted with approval in *Gardner* v. *Viall,* 36 R.I. 436, 443–44, 90 A. 760 (1914). We have previously indicated that where the testatrix bequeathes the exact amount of stock she owns in a corporation on the date she executes her will, that will suffice to indicate that she intended to make a specific bequest. *Fidelity Trust & Title Co.* v. *Young,* supra, 365, citing *White* v. *Winchester,* 23 Mass. (6 Pick.) 48 (1827). As already noted, the testatrix in the present case bequeathed the exact amount of stock she owned when she executed her will. This fact, in addi-

---

[6] Further, the defendant's brief indicates that there is no deficiency of assets in the testatrix's estate. This fact, in addition to the anti-ademption clause in the testatrix's will, leave no reason to presume that a general legacy exists.

tion to the anti-ademption clause in the testatrix's will, makes it clear that she intended to make a specific bequest and therefore the defendant grandchildren are entitled to the additional shares of stock resulting from the stock split. *Fidelity Title & Trust Co.* v. *Young*, supra.

Accordingly, we hold that the trial court did not err in concluding that the defendant grandchildren are entitled to the additional shares of stock, over and above the amount originally bequeathed in the testatrix's will, that resulted from the stock splits. While a codicil has the effect of republishing a will, the testatrix's intent is to be determined not only by the codicil, but also the language of the will and the circumstances surrounding the execution of the will and codicil. The facts in this case clearly show that the testatrix intended her grandchildren to have the shares of stock resulting from any stock split in addition to the shares originally bequeathed in the will.

There is no error.

In this opinion the other justices concurred.