[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON REMAND
The plaintiff and the defendant were married in Hartford on September 26, 1980, separated in 1989 and divorced in Hartford January 16, 1991. At times, the activity in court created the illusion that they have spent more time in litigating with each other than in their marriage to each other. Their divorce case has been the subject of at least two appeals to the Appellate Court and an appeal from the Appellate Court to the Supreme Court. A brief history of their litigation will furnish the setting of this court's decisions.
On January 16, 1991, the parties were divorced by me, but all issues of custody and finances were reserved for later decision. On April 23, 1991, Judge Steinberg decided the custody and financial issues that had ben [been] reserved. The defendant appealed the financial orders to the appellate court and on February 11, 1992, the judgment was reversed as to the financial orders and remanded for a new hearing on all financial issues. Mulholland v. Mulholland, 26 App. 585. (1992). It is that remand which is the subject of this decision. In the interim, however, the defendant was found in contempt of court by Judge Norko for failure to pay Judge Steinberg's original orders of support that were in being prior their reversal by the Appellate court on February 11, 1992. That contempt order was appealed by the defendant and sustained by the Appellate Court. The decision of the Appellate Court was appealed to Supreme Court, which appeal is pending. While the appellate process continued this court has heard and decided pendente lite motions concerning support and CT Page 6579 other problems.
This decision will deal with issues of custody, property division, alimony, child support and the plaintiff's request for attorney fees for the original appeal that resulted in the remand. In the context of those issues, the court will discuss shared parenting, guidelines, the economic studies that support the guidelines and the affect of a child born to a subsequent marriage on the support of children of the previous marriage.
CUSTODY
Two children were born to the plaintiff and defendant: Colin James born September 18, 1984, now almost 10 years of age and Rachel Anne Mulholland born November 5, 1986, who will be eight years of age next November.
When the parties separated in 1989, the children were five and three. Until the hearing before Judge Steinberg, the parties, by agreement, operated under a shared parenting custody arrangement with the children living alternatively with the mother one week and the father one week. Nevertheless, during the trial before Judge Steinberg the parties focused on the custodial issue. An expert recommended a living arrangement which favored the plaintiff's position but which sharply departed from the parties' shared parenting schedule. Judge Steinberg ordered the following as to custody of the children:
 "Custody: The parties shall have joint legal custody of the minor children, Colin James and Rachel Anne. Primary physical residence of the minor child shall be with the plaintiff mother. The parents shall consult in major decisions regarding the child's general welfare, and any disputes or differences that arise. Plaintiff mother shall have the final decision.
The parties shall exert every reasonable CT Page 6580 effort to maintain open access and contact between the parents and the children. Neither parent shall do anything which may estrange the children from their other parent or act in such a way as to hamper the natural development of the children's love and affection for the other parent.
 Each parent shall keep the other informed of travel, vacation or other plans involving the children being away from home, for three or more nights. They shall each inform the other of any illness, accident or other circumstances seriously affecting the health or welfare of the children.
 Each parent shall inform the other at least ninety days in advance of any change in permanent residence.
 Access: The children shall alternate living with the plaintiff mother and the defendant father in repeating seven-week pattern as follows:
 Father, mother, father, mother, father, mother, mother. Father, mother, father, mother, father, mother, mother, and then it gets repeated again.
 Thanksgiving Holiday with father, Christmas Eve from four P.M. until Christmas Day morning at ten A. M. with mother, Christmas Day ten A.M. until the following morning with father, remainder of Christmas vacation is to be shared equally; Easter Sunday, nine A.M. to six P.M. with mother."
That portion of Judge Steinberg's decision was not appealed. The focus of this trial was on money issues; but the plaintiff did ask the court to alter the access schedule to a visitation type schedule. The court finds that the children have thrived under the custodial access arrangement ordered by Judge Steinberg. Despite the parties contentiousness in the legal arena, and to their credit they have performed well with the shared parenting arrangement. No good reasons have been presented to alter the current arrangements. It is in the children's best interest to continue to reside in the manner previously ordered.
PROPERTY
CT Page 6581
The court has considered all the criteria contained in Section 46b-81 of the Connecticut General Statutes in determining the assignment of property. Both parties agree that Sunburry v. Sunburry, 216 Conn. 673 (1990) provides that the proper time for the valuation of marital property is at the time of dissolution. At the time of the divorce, he was 38 and she was 37. Both were lawyers, both in good health and each had contributed in relative equal fashion to the accumulation of their limited marital assets. Her income, as an assistant attorney general, was more stable with a package of benefits including a medical insurance and pension plan. His income was more erratic, cashflow fluctuating higher and lower than hers, but without the benefit of a medical insurance package or public pension program. The court finds no fault on the cause of dissolution in terms of the grounds enumerated in Section 46b-40 (c) of Connecticut General Statutes in this relatively short marriage. Rather, there appeared to be and still is a dance of control between them, with neither able to see the other's viewpoint. This is also reflected in their claims as to the valuation of their assets. She claims his law practice is worth $100,000 and that she made a non-monetary contribution to that practice of $125,000. She argues that the marital home that she resides in at 425 Church Street, Wethersfield was worth $140,000. She further, claims that the home at Stillwell Road, Wethersfield that he acquired after their separation was worth $155,000.
On the other hand, he claims that his law practice had a value equal to his share of its fixed assets, i.e. $13,000. He argues that the marital home at Church Street where she lives is worth $190,000. He claims that the residence on Stillwell Road was worth $130,000. This court makes the following finding:
 (1) The marital home at 425 Church Street, Wethersfield had a fair market value of $145,000.
 (2) The value of his law practice is limited to $13,000. The value of the fixed assets. See Eslami v. Eslami, 218 Conn. 801 (1991).
 (3) The fair market value of the property at Stillwell Road, Wethersfield had a fair market value of $130,000. CT Page 6582
 After determining the fair market value of those assets, deducting the mortgage liability of those assets at the time of the dissolution and considering the liquid assets of each of the parties as well as the other assets to which there was no substantial dispute as to value, the court enters the following orders:
 1. Defendant shall quit claim all his right title and interest to 425 Church Street, Wethersfield, Connecticut to the plaintiff.
 2. Plaintiff shall simultaneously execute and deliver a promissory note to the defendant in the amount of $15,000 payable 5 years from date together with interest at the rate of 6% per annum and together with costs of collection and reasonable attorney's fees in the event she fails to pay that note upon due date. She shall execute a mortgage at the premises to secure that note. The plaintiff will indemnify and save the defendant harmless from the existing mortgage at 425 Church Street, Wethersfield, Connecticut.
 Defendant shall permit the plaintiff to refinance the existing mortgage on said property by way of subordination for the limited purpose of making reasonable repairs on that property but said new mortgage shall not exceed seventy five percent of the fair market value of said property at that time. In the event there is a dispute as to the cost of reasonable repairs or the fair market value on the property at that time, the parties shall first mediate those issues through the family relations division at the Superior Court or a mediator designated by that division. In the event of failure of mediation, the court CT Page 6583 will resolve the dispute.
 3. Plaintiff shall release her lis pendent from the premises known as Stillwell Road, Wethersfield.
 4. All other property including pensions, cash, automobiles, bank accounts, etc. shall remain the property of the party named as owner as listed on their affidavit.
 4. Each party shall retain ownership of all assets currently in their respective possession. Each shall be responsible for the debts listed on their financial affidavits except the mortgage on the property at 425 Church Street which shall be the responsibility of the plaintiff.
ALIMONY
The court has considered all the criteria contained in 46B-82 of the Connecticut General Statutes and finds that there should be no alimony to either party.
SUPPORT
On February 16, 1993, this Judge entered a decision on pendente lite motions in this case which discussed the child support obligations in the context of the then existing parenting arrangement of the parties. That arrangement has been continued by this decision so that the mother has the children 57% of the time and the father has the children 43% of the time.
"Section 46b-215b of the Connecticut General Statutes provides as follows:
 (1) That child support guidelines shall be considered in all determinations of child support amounts within the state.
 (2) There shall be a rebuttable presumption that the support amounts that result from the CT Page 6584 application of the guidelines are the proper amounts to be ordered.
 (3) A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case as determined under criteria established by the commission shall be sufficient to rebut the presumption.
 (4) In determining child support, guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in section 46b-84 of the Connecticut General Statutes."
Section 46b-84 of the Connecticut General Statutes provides that the court shall consider the abilities of the parents, including age, health, station occupation, earning capacity, amounts and sources of income, estate, vocational skills and employability of each of the parents and the child, as well as the needs of the child in determining amount of support.
Several statutes provide that the court shall make orders concerning custody and visitation in the best interest of children. Connecticut General Statutes Sections 46b-56, 46b-56a,46b-59, 46b-61.
The Child Support Guidelines provide, in part, as follows:
`(8) Custody Adjustments
 The Commission identified two categories of custody arrangements for which special consideration should be given in setting child support awards. "Shared custody" exists where the parents substantially share the physical care and control of the child or children. "Split custody" exists where each parent has primary physical care and control of one or more of the children. CT Page 6585
 In the case of shared custody, the Commission finds that where the dependent child spends substantial time in the care of each parent, this factor should be considered a reason for deviation from the guidelines. A specific adjustment factor, is not included in the guidelines because such adjustments should only be made based on the totality of circumstances in individual cases, which will inevitably be more complex than can be adequately contemplated in a rigid mathematical formula."'
 COURT'S ANALYSIS
The court finds that the court-ordered arrangement of physical custody of the two children in this case is "shared custody" within the meaning of the Connecticut Child Support Guidelines. The children spend three-eighths of their time living with the father and five-eighths of their time living with the mother. The court finds that the Commission did not intend to define "shared" parenting so narrowly as to require precisely a 50-50 time. If it had intended that only a 50% sharing to mean substantial time it would have been easy for it to say so.[1] Various state jurisdictions that have considered the issue judicially and statutorily have concluded the concept of shared custody contemplates a lesser custodial time than 50% with each of the two parents. V.B. v. M.L.T.B.,467 A.2d 880 (Pa.Super. 1988); Cohen v. Cohen, 396 S.E.2d 344
F(N.C.App. 1990); Valento v. Valento, 385 N.W.2d 860
(Minn.App. 1986); Broas v. Broas, 472 N.W.2d 671
(Minn.Ct.App. 1991); Colo. Rev. Stat. Sec. 14-10-1115(8) 1987).
The parties really did not dispute the fact that their parenting arrangement is a shared custody but rather disputed each others claim as to net income and the methodology of analysis to use in a shared custody case.
She claims that his net income is $1532.68 and that her income was $697.41. He claims she has a net income of $835.65 and that his net income is $689.67. The court finds her net income is $757 and that his is $813. The court rejected her determination that his income should be determined by adding three years of income and dividing by three. That would skew CT Page 6586 his income by adding in an unusually high year that took place 3 years ago. The court has added to her claimed net income $60 per week because she has consistently had income tax refunds in that amount for the past three years. On the other side of the coin the court rejected his claim that his net could be determined by subtracting from net income his support obligation to a third child born to a subsequent marriage, and the court further rejected his claim that the court should not consider her day care expenses for their children in arriving at her net income.
ANALYSIS
The father has urged the court to use the formula used by the State of Minnesota in shared custody cases. That formula is a short hand method for determining what the father would pay to the mother when the children are with mother and determining what the mother would pay to the father when the children are with the father, and then offsetting the two.
In the context of this case the Minnesota short hand formula would be handled, in this way:
Mother Father
Net Income $757.00 $813.00
Time Guidelines % 28.46 28.46
Guideline Support 216.00 231.00
% of time with other parent 43% 57%
Adjusted Support 93.00 132.00
Mother 93.00 ------ Father owes mother weekly 39.00
In the context of the facts of this case the methodology utilized in Minnesota was helpful as an analytical tool particularly where parties housing costs for sheltering the children are similar.[2] The court recognizes that the Minnesota approach which provides that each parent owes CT Page 6587 support to the other based on the time the child spends with the other parent is the most common approach in shared custody cases. This approach is used in the Colorado Child Support Guideline, the Delaware Nelson Formula and the Washington Uniform Child Support. Development of guidelines for ChildSupport Orders. U.S. Department of Health, (1987) Chapter 3, p. II-57.
Nevertheless, the guidelines themselves provide that adjustments in shared custody arrangement should be based on the totality of the circumstances, rather than a rigid mathematical formula. It is appropriate for the court to consider the criteria in Sec. 46b-84 of the Court General Statutes and this the court did. The court's approach is consistent with the philosophy of the consultant to Connecticut's Guideline Commission as to shared custody when he states that although "child rearing expenditures actually incurred by the parents are more or less proportionately to the amount of time each parent cares for the child", there are exceptions in individual cases where one parent bears a disproportionate share of expenses. Development of Guidelinefor Child Support Orders, supra. II 54 and II 79.
Accordingly, the court has considered additional expenses incurred by the plaintiff for the children over and above defendant's expenses related to the children and orders the sum of $90.00 per week as child support. This should be reviewed when the plaintiff no longer has day care expenses.
In addition the court enters the following orders:
Medical Insurance
Each shall continue their children under medical insurance plans currently available to them. Each shall be responsible for one-half of any reimbursed medical, dental orthodontic, prescriptive, optical and related expenses of the children.
See 46b 84 c shall apply.
Life Insurance
Plaintiff and Defendant shall each maintain a minimum of one hundred thousand dollars insurance on their lives. The CT Page 6588 minor children shall be named as irrevocable beneficiaries of fifty thousand dollars each until the minor attains the age of eighteen years.
Income Tax Deductions
Plaintiff and Defendant shall each be entitled to claim one of the children as dependent for income tax purposes. Plaintiff shall claim Rachel, Defendant shall claim Colin. When only one of the children is available as a dependent, the parties shall alternate the child with Plaintiff claiming the child in the first year.
Plaintiff's — Suggestion
The plaintiff has suggested that in handling this shared custody that the defendant should merely be given a 10% credit against a standard guideline obligation because the child spends 10% more time with the father than what she terms as a traditional visitation pattern of every other weekend, alternate vacations from school and a months summer vacation. The court has rejected this rigid approach for a number of reasons:
 1) It ignores the necessary housing and other expenses related to the children that are duplicated in this shared custody arrangement.
 2) It ignores that the fact that the current guidelines percentages are based upon the percentage of income that children utilize in an intact family without duplicate housing expense.
 3. There is no traditional visitation assumed by the guidelines. Rather the guidelines are based upon Rothbarth/Betson Estimate of Net Income. Allocated to children which has no standard visitation component. It should be noted the new Connecticut guidelines are 2% higher than Rothbarth/Betson Estimate. Briefing Material Relating to Guidelines Percentages, Dec. 15, 1912. Prepared by Robert G. Williams, Connecticut Consultant.
4. Carried to its illogical conclusion if a parent CT Page 6589 who didn't have shared custody would pay $100. child support, than a parent who had a child 49% of the time would pay $84. — and a parent who had a child 50% of the time would pay nothing.
 5. In the context of this case, that approach is inconsistent with the Guideline command that it is inappropriate to use "rigid formulas".
 Child Support Obligations as Affected by Children Born To the Husband and a Subsequent Spouse
The court has not reduced father's obligations to his children by the plaintiff mother because of the birth of a child to he and his current spouse. Normally speaking, the court has not found it appropriate to reduce an obligor's support to prior children by virtue of the birth of another child to that obligor, although the court has had exceptions to that norm. In this case, the defendant father's proposal would essentially cause his former wife to partially support his child by his current wife without taking into account his current wife's capacity under § 46b-84 of the Connecticut General Statutes and, in addition, it would not take into account his own capacity to support his new child without the assistance of his former wife. The case he cited on this point is not applicable because in that case the former wife attempted to increase support from a former spouse based upon the increase in income of the former spouse without regard to additional obligations he had incurred because he had remarried and had a child by that remarriage. Burkman v.Burkman, 1 Ct. CaseBase 10354 (1991). The current guidelines provide as follows: "In the case of subsequent children and spouses, deviation is only permitted in the context of a hearing or a proposed upward modification of a pre-existing support order", Guidelines 1994, pg. XIII.
Attorneys Fees for The Original Appeal
At the time of the original judgment in 1991, Judge Steinberg ordered attorney's fees to the plaintiff on appeal, but set no amount. A postjudgment award of Attorneys fees is determined by the situation at the time the award is actually made, not when ordered. Anderson v. Anderson, 191 Conn. 59, see also Paranteau 1983. v. DeVita, 208 Conn. 575, 524. f. 11. 1988. Based upon the financial situation of the parties at CT Page 6590 the time of this hearing there is little to distinguish them financially and the court enters no order as to the original attorneys fees incurred by the plaintiff on the original appeal.
Judgment shall enter in accordance with this memorandum.
Barall, J.