570 S.E.2d 190

**Norma B. POLSON, Respondent,**

v.

**Elizabeth D. CRAIG, Laura D. Young, Catherine Jean DuBose, Cheryl Ann DuBose, Richard Preston DuBose, and James Newton DuBose, Appellants.**

**In re Estate of Martha S. Broadbent.**

**J. Alex Stanton, Petitioner,**

v.

**Norma B. Polson, Dana Polson Hadley, Daphene Polson, David B. Polson, Elizabeth D. Craig, Laura D. Young, Catherine Jean DuBose, Cheryl Ann DuBose, Richard Preston DuBose, James Newton DuBose, Janie Hough, Harvey Knight, and John Richard DuBose, Respondents.**

No. 3474.

Court of Appeals of South Carolina.

Heard Jan. 9, 2002.

Decided April 8, 2002.

434

Robin Page Freeland, of Bell, Tindal & Freeland, of Lancaster; and Harriet E. Wilmeth, of Hartsville, for appellants.

Peter L. Murphy, of Columbia, for respondent Norma B. Polson.

GOOLSBY, J.:

Elizabeth D. Craig, Laura D. Young, Catherine Jean DuBose, Cheryl Ann DuBose, Richard Preston DuBose, and James Newton DuBose (referred to collectively as Appellants) appeal the circuit court's reversal of the probate court's finding that Norma Polson is entitled to eight hundred shares of Exxon stock owned by Martha Broadbent at her death. The circuit court reversed, ruling Polson is entitled not only to the original four hundred shares of stock devised in Martha

Broadbent's will but to all additional shares resulting from stock splits of those shares. We affirm.

## FACTS

This case began when Alex Stanton, in his capacity as Personal Representative, petitioned the probate court for an order declaring Norma Polson's interest in shares of Exxon stock owned by Martha Broadbent at the time of her death. Norma Polson is the daughter of William B. and Norma B. Broadbent. When Polson was growing up in Hartsville, her parents were good friends of John and Martha DuBose. The Broadbent and DuBose families lived near each other for many years and saw each other frequently. Sometime after Norma Broadbent and John DuBose passed away, William Broadbent and Martha DuBose married. William Broadbent died in 1965.

In his will, William Broadbent devised four hundred shares of Standard Oil of New Jersey stock to Martha.[1] The will provided in pertinent part:

### ARTICLE IV

I give and bequeath to my wife, MARTHA S. BROAD-BENT, the remaining four hundred (400) shares of capital stock of Standard Oil of New Jersey, if owned by me at the time of my death, together with all dividends, rights and benefits declared thereon subsequent to the time of my death and all rights and benefits thereof. This bequest to my wife is unstricted (sic) and without condition. *However, in the event that she should have no need for these shares of stock during her lifetime, it is my request that she give said shares to my daughter, Norma B. Polson, at my wife's demise.* (emphasis added).

In 1967, Martha wrote a will stating in part, "I hereby give and bequeath unto Norma B. Polson, daughter of my late husband, four hundred (400) shares of capital stock of Standard Oil Company."

Martha Broadbent died in 1997. In her last will, dated March 19, 1984, Martha repeated the 1967 devise of four hundred shares of Standard Oil stock to Norma Polson.

---

1. William inherited the stock from his sister.

At the time of Martha's death, however, Standard Oil of New Jersey no longer existed; it had become Exxon Corporation in 1972. Due to subsequent stock splits, the original four hundred shares greatly increased in number.

After hearing the evidence, the probate court concluded Martha intended only a general devise of four hundred shares of Exxon stock to Polson.[2] Because the devise is general, the court held Polson is not entitled to additional shares resulting from stock splits.[3] Polson appealed to the circuit court.

The circuit court reversed, finding that the probate court erred as a matter of law in holding the devise is general and that S.C.Code Ann. section 62–2–605 (Supp.2001) is not controlling.[4] Under section 62–2–605, if the devise is specific, Polson is entitled to the original four hundred shares and to all additional stock resulting from splits.[5]

## ANALYSIS

Appellants argue the probate court's finding that Martha intended a general devise of only four hundred shares is supported by the evidence. They further contend Polson failed to present any evidence of Martha's intent to devise Polson more than four hundred shares of Exxon stock.

An action involving the construction or interpretation of a will is an action at law and the findings of the trial judge

---

2. The probate court concluded the will contained a patent ambiguity, and admitted extrinsic evidence. We note that extrinsic evidence is admissible when there is a *latent* ambiguity, not a *patent* ambiguity. *See Shelley v. Shelley*, 244 S.C. 598, 137 S.E.2d 851 (1964). In the instant case, however, we do not reach the issue of whether the probate court properly admitted extrinsic evidence because the parties did not raise this issue.

3. The court later reconsidered its order and held that Polson is entitled to additional shares from the stock split after Martha's death but not to shares from splits prior to Martha's death. This order gave Polson a total of eight hundred shares.

4. The circuit court also found the probate court erroneously held the will contained a patent rather than a latent ambiguity.

5. *See* S.C.Code Ann. § 62–2–605(a)(2) (Supp.2001).

will only be disturbed on appeal when they are based on an error of law or are without evidence that reasonably supports them.[6]

Courts in this state construe wills and devises in accordance with applicable provisions of the South Carolina Probate Code unless the testator's will indicates a contrary intent.[7] S.C.Code Ann. section 62-2-605 addresses increases in devised stock as a result of stock splits. This section provides:

(a) *If the testator intended a specific devise of certain securities rather than the equivalent value thereof,* the specific devisee is entitled only to:

(1) as much of the devised securities as is a part of the estate at the time of the testator's death;

(2) *any additional or other securities of the same entity owned by the testator by reason of action initiated by the entity* excluding any acquired by exercise of purchase options;

(3) securities of another entity owned by the testator as a result of a merger, consolidation, reorganization, or other similar action initiated by the entity;

(4) any additional securities of the entity owned by the testator as a result of a plan of reinvestment if it is a regulated investment company.

(b) Distributions prior to death with respect to a specifically devised security not provided for in subsection (a) are not part of a specific devise.[8]

This section accords with the general rule that,

the legatee of a specific bequest of shares of corporate stock, as distinguished from the legatee of a general bequest, is entitled to any accretions to the bequeathed shares which are received by the testatrix, as a result of a stock split, subsequent to the making of such bequest. The rationale behind this rule is that "[a] stock split in no way

---

6. *Townes Assocs. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976); *NationsBank of South Carolina v. Greenwood,* 321 S.C. 386, 468 S.E.2d 658 (Ct.App.1996).

7. S.C.Code Ann. § 62-2-601 (1987).

8. *Id.* § 62-2-605 (emphasis added).

alters the substance of the [testatrix's] total interest or rights in the corporation . . . . [It] is merely a dividing up of the outstanding shares of a corporation into a greater number of units without disturbing the stockholder's original proportional participating interest in the corporation." * * * *If the legatee is not awarded the additional shares, the value of the specific bequest would be substantially reduced, contrary to the testatrix's intent.*[9]

A specific devise involves property capable of being separated and distinguished from the balance of the testator's property.[10] "A specific devise differs from a general devise in that it is not intended by the testator to be paid out of the estate generally, but *is to be paid solely by delivering to the devisee that specific article given by the will.*" [11]

*Cornelson v. Vance*[12] is a South Carolina case involving the determination of whether a devise of stock was general or specific. In Cornelson, the court strictly applied the presumption in favor of a general legacy in order to avoid an ademption.[13] Although Cornelson is not on point, the probate court here relied heavily on Cornelson, stating, "[t]he fact that the decedent in Cornelson did not own the stock at the time of her death does not affect the definition of a general legacy set forth in that case." This statement underscores the probate court's misunderstanding of the application of the presumption in favor of a general legacy.

In determining whether a bequest of stock in a named corporation is general or specific, there exists a presumption in favor of finding a general legacy. "Two reasons are given for this [presumption]; to prevent an ademption in

**9.** *Rosenfeld v. Frank,* 208 Conn. 562, 546 A.2d 236, 242 (1988) (emphasis added).

**10.** *Gist v. Craig,* 142 S.C. 407, 451, 141 S.E. 26, 40 (1927).

**11.** *In re Estate of Wales,* 223 Mont. 515, 727 P.2d 536, 537 (1986) (citation omitted) (emphasis added).

**12.** 220 S.C. 47, 66 S.E.2d 421 (1951).

**13.** Ademption occurs when specifically devised property is no longer a part of the testator's estate at the time of death. *Rikard v. Miller,* 231 S.C. 98, 97 S.E.2d 257 (1957); *Fenzel v. Floyd,* 289 S.C. 495, 347 S.E.2d 105 (Ct.App.1986).

case the testator parts with the stock before his death, and to secure uniformity of contribution in case of a deficiency of assets." *When the reasons, however, behind the presumption do not exist and or "a contrary intent appears from the will"; ...; the presumption will not apply.*[14]

" '[A] very slight indication of an intention to give shares then in his ownership is enough to make [a] legacy specific ....' "[15]

Ademption is not an issue in this case. The second reason behind the presumption in favor of a general legacy is also not present here because there is no evidence of a deficiency of assets in Martha's estate.

We therefore look to the evidence to determine whether there is an indication, however "slight," of Martha's intent to make the legacy specific. Martha's last will states in pertinent part:

*ITEM II.* I hereby will and bequeath unto Norma B. Polson, daughter of my late husband, four hundred (400) shares of capital stock of Standard Oil Company.

The probate court held the lack of a possessive term such as "my stock" or "the stock which I own" demonstrates the bequest is general. Appellants argue Martha's use of the term "four hundred" evidences an intent to limit the devise to four hundred shares.

In examining the record to see if the probate court's finding that Martha intended only a general devise of stock or its monetary equivalent is supported by the evidence, we can find no evidence Martha intended anything other than to give Polson the stock she received from William Broadbent's will. All of the evidence indicates Martha's reference to "four hundred" shares is a specific reference to the four hundred shares of Standard Oil stock she received from William Broadbent. Martha's early will, written shortly after William's death, and Martha's reference to "four hundred" shares in her later will indicate Martha intended to comply with the request in William's will that she return the shares to Polson in the event she had no need of them.

---

**14.** *Rosenfeld v. Frank,* 546 A.2d at 242–43 (citations omitted) (bracket and emphasis in original).

**15.** *Id.* at 243 (quoting *Fid. Title & Trust Co. v. Young,* 101 Conn. 359, 125 A. 871, 873 (1924)).

Jean DuBose testified Martha "wanted to return the 400 shares that Bill gave to her—back to Norma." There is evidence that Martha kept this Exxon stock separate from her stock portfolio.[16] Even Pam Yarborough's deposition and testimony stating that Martha intended to give Polson four hundred shares of stock does not support the finding that the devise of "four hundred" shares is not a specific reference to the four hundred shares Martha received from William Broadbent.

Standard Oil of New Jersey did not exist at the time Martha executed the will. The only possible reason for the description of the stock as Standard Oil stock was that the stock Martha intended to give Polson is the same Standard Oil stock William devised to her in his will. Martha's two wills and all the evidence support the conclusion that Martha intended to return to Norma the same stock she received from William, not merely its monetary equivalent, if it remained in her estate at the time of her death. This stock is clearly separable and distinct from the rest of the property in Martha's estate.

In view of the above, we agree with the circuit court that the probate court erred in applying a presumption in favor of a general bequest under these circumstances. In fact, the order from the probate court reflects that the only possible conclusion is that the devise is specific rather than general. The court stated, "[s]ince we can easily identify which 400 shares Mrs. Broadbent wanted Mrs. Polson to have by simply allowing corporate records to confirm the current name of Exxon Corporation from the previous name of Standard Oil Company, we do not have to 'rewrite' her will to change the number of shares to Mrs. Polson."

---

16. In a letter to Polson, Cheryl DuBose wrote:

Given my new knowledge of Grandma's financial situation and how it is being used to support her, I think I understand why the Exxon stock is not in the Merrill Lynch portfolio. It is my theory that Grandma has been very careful to protect your's (sic) and your children's interest in the Exxon stocks, and would not consider putting them in an account whose value is borrowed against.

See Gist v. Craig, 142 S.C. at 451, 141 S.E. at 40 (stating a specific devise is one in which the property devised is separate and distinguished from all other property of the testator).

Furthermore, because the evidence indicates the devise to Polson is specific, it is unnecessary for Polson to show that Martha intended she receive additional shares resulting from stock splits. Subsection 62–2–605(a)(2) entitles Polson to "any additional or other securities of the same entity owned by the testator by reason of action initiated by the entity excluding any acquired by exercise of purchase options." This subsection permits Polson to claim the additional stock resulting from stock splits. Had Martha not intended this result, she could have included a statement to the contrary in her will.[17]

We therefore conclude the probate court's finding that the devise is a general one, not subject to section 62–2–605, is not supported by reasonable evidence and is governed by an error of law regarding the application of the presumption in favor of a general devise. We accordingly affirm the circuit court's order holding that Polson is entitled to the original four hundred shares and all additional stock resulting from subsequent stock splits.

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.

---

17. *Estate of Holden v. Holden*, 343 S.C. 267, 539 S.E.2d 703 (2000) (holding a party is presumed to have knowledge of existing law). *See also Padgett v. Black*, 229 S.C. 142, 148, 92 S.E.2d 153, 156 (1956) ("'a will speaks at the death of the testator'") (quoting *Key v. Weathersbee*, 43 S.C. 414, 424, 21 S.E. 324, 328 (1895)).